Watkins *et al* v. United States Fidelity & Guaranty Co.*

(Division B. March 9, 1925. Suggestion of Error Overruled April 6, 1925.)

[103 So. 224. No. 24721.]

Highways. *Bond to pay person furnishing labor or materials used in public work does not cover accounts for groceries and merchandise furnished commissary operated in aid of work, but for profit, in view of sale to others than laborers.*

The surety on a bond executed under the provisions of section 1, chapter 217, Laws of 1918, conditioned, as required in such section, to pay any person who has furnished labor or materials used in the construction of public work which had not been paid for, does not cover accounts for groceries and merchandise furnished a commissary, which commissary is operated by the principal contractor in aid of his work, where the commissary was operated for profit, and part of the merchandise sold to others than the laborers, the amount of such sales to outside parties not being shown.

---

*Headnote 1. Highways, 29 C. J., section 353.
1919.

APPEAL from chancery court of Monroe county.

HON. A. J. McINTYRE, Chancellor.

Action by Guy H. Watkins and others against the United States Fidelity & Guaranty Company. From a decree disallowing certain accounts against a public contractor's bond, plaintiffs appeal. Affirmed.

*Leftwich & Tubb,* for appellants.

I. Did the articles for which intervenors sue constitute materials furnished the principal in the course of the performance of the work? The bond executed by the contractor is provided for under Sec. 1, Ch. 217, Laws 1918. It will be observed that the bond itself contained this obligation, that the surety therein "shall pay the agents, servants and employees and all persons furnishing said principal (O. A. Prescott & Company) with material and labor in the course of the performance of the work."

The only question here, is whether or not the groceries and other articles sued for, constitute materials furnished the contractor in the performance of the work. This question as to the groceries for a commissary is one of first impression in this state, so far as we have been able to ascertain, but the identical question has been passed upon by the supreme court of the United States in construing the Federal Statute. *Brogan* v. *National Surety Co.,* 246 U. S. 257, 62 L. Ed. 703. See, also, *United States Fidelity & Guaranty Co.* v. *United States,* 231 U. S. 237, 58 L. Ed. 200; *Illinois Surety Co.* v. *John Davis Co.,* 244 U. S. 376, 61 L. Ed. 1206.

It will be observed that the case at bar is indeed very similar to the special circumstances of the Brogan case. It will be remembered that the contractor, Prescott &

Company, had a contract for the construction of fourteen miles of road beginning at the Tombigbee River Bridge, about one mile East of Aberdeen. This road was fourteen miles in length and was through a neighborhood which was rather sparsely settled and where no hotels or boarding houses either public or private, were conducted and where very few negro families lived in the territory adjacent to the road.

Seven substantial witnesses testified as to the absolute necessity of maintaining the commissary, the kitchen and the long table, and there is not a syllable of testimony offered in opposition. How could the contractor maintain the camp, feed these men, and take care of them except as he did in this instance, to buy groceries, provisions and other supplies from the local merchants in the adjacent towns who had these articles for sale? The groceries and other provisions sold by Watkins for this commissary are just as much a part of the material supplied for this job as any of the other material, such as cement, steel bars, lumber for concrete forms, and other like materials, and this is true also of the tobacco, cigarettes and things of that sort which appear on Watkins' account and which went to this commissary and were sold to these laborers. The testimony shows that the contractor was compelled to keep these things in order to keep his men from running about over the country at night going into the towns for little things of this sort, which they desired, that if they were permitted to do this many of them the next morning would not be found on the job, the labor would be disorganized and the work greatly impeded.

The learned court below was in error in disallowing these respective claims, that the decree should be reversed and decree entered here allowing them with interest.

*Wm. M. Hall,* for appellee.

The contest here is of the correctness of the chancel-cellor's disallowance of the claim of Guy H. Watkins for two thousand one hundred thirty-one dollars and ninety cents for groceries, and six hundred twenty-three dollars and nineteen cents for tobacco, cigarettes, etc.; the claim of J. B. Elixson for four hundred eighty-one dollars and eighteen cents for shoes; and the claim of R. W. Reed Company for one hundred seventy-five dollars and seventy-five cents for clothing.

Counsel for appellants say:  "The only question here is whether or not the groceries and other articles sued for constitute materials furnished the contractor in the performance of the work." They mean of course, materials furnished for the work and used therein within the meaning of the statute (Acts 1918, ch. 218, sec. 1). Counsel are utterly mistaken about the supreme court of the United States, in *Brogan* v. *National Surety Co.*, 246 U. S. 257, 62 L. Ed. 703, passing upon the question whether "groceries for a commissary" constituted material within the Federal Statute.

The only case that the writer knows of in which the precise question here involved has arisen since the Brogan decision is *Carter County* v. *Oliver-Hill*, 143 Tenn. 649, 228 S. W. 720, and it was decided in that case contrary to counsel's contention. The supreme court of Tennessee had previously held in *Luttrell* v. *Railroad Co.*, 119 Tenn. 492, 123 Am. St. Rep. 737, that commissary supplies are not material for which furnishers would have liens.

If the surety on the contractor's bond could be held for groceries that passed through a commissary so conduct-ed, it would be to hold it responsible for losses from bad accounts, stealings and wastage, as well as the part that might have been furnished to and used by the laborers on the work. That would be unfair and unjust to the surety.

The supreme court of Tennessee in *Southern Construction Co.* v. *Halliburton*, 149 Tenn. 319, was called upon

to pass upon the question of the liability of the principal contractor and his surety for groceries furnished to a sub-contractor and used by him in the camps where his laborers were fed, and the court indicates very clearly that no presumptions are to be indulged as to the conditions and circumstances essential to the application of the rule in Brogan's case.

It should be manifest from all this that Watkins' claim for groceries was properly disallowed. As to his claim for tobacco and cigarettes, those things not only went to the commissary but they have never been considered on any theory as material necessary to and used in construction work. *Clatsop County* v. *Feldschau* (Ore.), 196 Pac. 379; *Ferguson* v. *Despo,* 8 Ind. App. 523, 34 N. E. 575. As to Elixson's claim, see *United States* v. *Rundle,* 107 Fed. 227, 46 C. C. A. 251, 52 L. R. A. 505, where suit was brought on a contractor's bond to recover money paid to the employees of the contractor on time checks issued to the employees by the contractor.

Claim of R. W. Reed Company. Reed & Company sold raincoats and other articles of wearing apparel which the laborers were compelled to have, these were carried to the commissary and there distributed out to the laborers and the purchase price deducted from the pay roll of the laborer just as in the Elixson case. These goods neither as commissary supplies nor as clothing for the men are materials or labor used in the work. *Luttrell* v. *Railroad Co.,* 119 Tenn. 492, 519; *Perrault* v. *Shaw,* 69 N. H. 180, 76 Am. St. Rep. 160; 9 Am. & Eng. Ann. Cas. 309; 43 L. R. A. (N. S.) 165 and 1915-F L. R. A. 951, and copious notes covering the general subject of what is and what is not labor and material within the meaning of such statutes.

Argued orally by *C. L. Tubb,* for appellant.

ETHRIDGE, J., delivered the opinion of the court.

The appellants, Watkins, Elixson, and R. W. Reed & Co., filed a petition in the chancery court of Monroe coun-

ty, alleging that O. A. Prescott & Co. entered into a contract with the road commissioners of supervisors district No. 3 and with the board of supervisors of Monroe county, Miss., for the construction of fourteen miles of road in said supervisors' district No. 3 of said county; that the United States Fidelity & Guaranty Company, a surety company, executed bond for said contractors in the penalty of ninety-six thousand five hundred sixty-nine dollars, conditioned according to law, which bond, among other things, provides that the sureties thereon "shall pay the agents, servants, and employees, and all persons furnishing said principal (O. A. Prescott & Co.) with material and labor in the course of the performance of the work;" that soon after the execution of the contract and bond, the contractors entered into the performance of the work, and continued therein until on or about December 7, 1920, at which time they became wholly and hopelessly insolvent, and unable to go forward and complete the work, and a receiver was appointed by the chancery court of all the goods, property, and effects of the said contractors, and said contractors abandoned the work; that during the course of the performance of the work of the said contractors, O. A. Prescott & Co., it became necessary for said contractors to establish movable camps to feed and house the laborers, and to furnish said laborers with supplies in the way of overalls, shoes, and clothing in order to keep them on the job, and to be able to assemble them and have them when wanted; that the petitioners furnished the supplies set forth in the exhibits to the bill to said laborers on the order of said contractors; and it is alleged that at the time of the abandonment of the work by said contractors, said O. A. Prescott & Co., that said contractors were indebted to the said petitioners for the commodities so furnished in the amounts set forth in the accounts made exhibits to the bill.

It is further alleged that the surety company, said United States Fidelity & Guaranty Company, under said

bond was liable for the supplies so furnished to said laborers on the orders of said contractors, which supplies were not paid for, and petitioners prayed for judgment against said surety company, the United States Fidelity & Guaranty Company. The accounts exhibited by the appellant Elixson, consisted mainly of orders by one Mc-Cune to Elixson issued in favor of certain laborers for specific amounts. A few of the items were charged to the commissary on the order of McCune.

The account of the appellant Watkins, consisted of various and sundry items of merchandise, a few of the items being as follows:

| | | |
|---|---|---|
| December 4. | 12 oats, $57.00; (3) M. Camels, $8.00; M. Chesterfields $8.00 ..................................$ | 73.00 |
| December 3. | 424# flour, $6.25; (4) 2 Cs. sausage, $18.00 .... | 24.25 |
| December 4. | 10 Gal. oil, $2.00; 110# C. lard $30.25; 1 Cs. meal $7.00 ............................................ | 39.25 |
| | 6# Star Tob. $4.92; 18 Sx. oats, $90.00; 1 Sx. salt $1.65 ......................................... | 96.57 |
| | 40# meat, $9.20; 100# sug. $22.00; 2 Cs. cof. $26.40 ......................................... | 57.60 |
| | 1 Cs. corn, $41.60; (6) 18 oats, $90.00; Bbl. flour, $12.50 ......................................... | 144.10 |
| December 11. | oil, $2.00; (13) 4 M cigts. $32.00; 2# walnuts, $0.80 ......................................... | 34.80 |
| December 17. | 14# turkey, $4.20; (19) 6# Star Tob. $4.92; Bx. B. M. Tob. $7.50 ............................... | 16.62 |
| December 20. | 12 oats, $63.00; 10 mix feed, $32.50; 1 salt, $1.10 .. | 96.60 |
| | 5 oil, $1.00; (23) 15 oats, $78.75; E. C. Cornell, turkey, $3.60 .................................. | 83.35 |
| December 24, | flour, $12.50'; 64# meat, $14.72; Sx. meal, $1.10; ½ bail rope, $1.40 .............................. | 29.72 |
| December 26. | 5 oil; (27) 6 plugs Star Tob. $4.86; 5 M. Camels, $8.00 ......................................... | 13.86 |
| December 29. | 1 bu. I. Pot., $2.50; 20 D. feed $58.00; 6 Sx. chops, $21.90 ....................................... | 82.40 |
| 1920. | | |
| January | 1. Bbl. flour, $12.75; 6# Star Tob. $4.92; BM Tob. $7.50 ......................................... | 25.17 |
| | 2# cheese .90; 2 oats, $10.50; 10 oil $2.00 ...... | 13.40 |
| | 45# lard, $12.38; 10 oats, $54.00; 10 gay, $9.50 .. | 75.88 |
| | | &c. |

Other items were similar in nature and character. The account of R. W. Reed Company is as follows:

O. A. Prescott & Co., Aberdeen, Miss.

By W. D. Prescott—

Year 1920.

| | | | | |
|---|---|---|---|---|
| Oct. 10. | 1 Dz. Pr. sox | ........................................ | $ | 2.65 |
| " | 3 " " " ..., | ...................................... | | 2.55 |
| Nov. 1. | 1 " rain coats | .................................. | | 50.00 |
| " 1. | 1 · " " | .................................. | | 6.25 |
| " 1. | 1 " " | .................................. | | 4.00 |
| " 3. | 3 Dz. Pr. sox | .................................. | | 7.95 |
| " 3. | 3 " " gloves | .................................. | | 12.00 |
| " 3. | 2 " union suits | .................................. | | 19.00 |
| " 3. | 1 " sweater | .................................. | | 15.60 |
| " 3. | 2 " work shirts | .................................. | | 60.00 |

|  |  |
|---|---|
|  | $190.00 |
| Less 1 coat short ........................................ | 4.25 |
|  | $175.75 |

The cause was referred to a master, and the master took testimony and filed his report, allowing most of the accounts and reciting in his report that the establishment of the camps for laborers was a practical necessity.

The United States Fidelity & Guaranty Company excepted to the master's report, excepting to all the items of the account of Guy H. Watkins for groceries, amounting to two thousand one hundred thirty-one dollars and ninety cents, and for tobacco, etc., six hundred twenty-three dollars and nineteen cents, on the ground that same were not material furnished or used in the work of constructing the road within the meaning of the statute, and that the weight of the evidence was that said goods were bought for a commissary, and resold therein, purchases being at one price and sales at a higher price, and to the public; to the long table or mess at which the laborers took their meals or not as they wished, and at a price that

included an amount for profit; that items in the commissary were furnished to the laborers and to their families living in the camps, some of whom took boarders; that the work being done was through an old and well-settled country, and that there were stores at accessible points along the way; that the stores in the city of Aberdeen were accessible to laborers; that the work was never far from Aberdeen, and many laborers went there on Saturdays to trade. Similar exceptions were taken to the other accounts.

The court sustained these exceptions and decreed that the claims for groceries, etc., were not allowable, but that the account for feed, for the stock amounting to one hundred five dollars and thirty-six cents was allowable with six per cent. interest. From the decree disallowing said accounts this appeal is prosecuted.

The statute bearing upon the subject is section 1, chapter 217, Laws of 1918, which reads as follows: "That any person entering into a formal contract with this state, any county thereof, municipality therein, or any political subdivision whatsoever therein, for the construction of any building or work or the doing of repairs, shall be required before commencing same to execute the usual bond, with good and sufficient sureties, with the additional obligation that such contractor or contractors shall promptly make payments to all persons supplying labor or material therefor; and any person who has furnished labor or materials used therein and wherefor payment has not been made, shall have the right to intervene and be made a party to any action instituted on such bond, and to have their rights adjudicated in such action and judgment rendered thereon, subject, however, to the priority of the claim and judgment of the obligee. If the full amount of the liability of the surety thereof is insufficient to pay the full amount of said claims and demands, then, after paying the full amount due the obligee, the remainder shall be distributed *pro rata* among said interveners. The bond herein pro-

vided for may be made by any surety company authorized to do business in the state of Mississippi."

The appellant relies upon the case of *Brogan* v. *National Surety Co.*, 246 U. S. 257, 38 S. Ct. 250, 62 L. Ed. 703, L. R. A. 1918D, 776. The syllabus of this case by the supreme court of the United States reads as follows:

"Groceries and provisions furnished a contractor for a public work for use in a boarding house which, on account of the absence of other accommodations, it was obliged to maintain for its laborers, are materials used in the prosecution of the work, within the meaning of the Act of August 13, 1894 (28 Stat. at L. 278, chapter 280), as amended by the Act of February 24, 1905 (33 Stat. at L. 811, chapter 778, Comp. Stat. 1916, section 6923), and of the bond given in pursuance of its requirements, though they would not have been such had the boarding house been conducted by the contractor as an independent enterprise undertaken solely for the sake of profit."

This decision goes further than the general authorities go in sustaining claims against sureties on contractors' bonds under similar statutes. See notes to 9 Ann. Cas. 309, 43 L. R. A. (N. S.) 165, and L. R. A. 1915F, 951. It will not be necessary for us to now decide whether we will hold with the United States supreme court, or follow the predominating number of decisions under state laws, because in our opinion the present case does not come within the announcement of the case of *Brogan* v. *National Surety Co.*, *supra*.

The learned chancellor in his opinion said: "There is no question from the proof introduced before the master, but what it was decidedly to the interest of the contractors to have this boarding house on the grounds: The greater part of the proof shows that it was necessary in order that they might keep their hands, and if this had been run purely and simply as a boarding house, under this proof, I would unhesitatingly hold under the Brogan Case that the surety company would be bound for it. In this case we find that these groceries were sold

to them at a profit; that they boarded them with the expectation of charging a profit for any part that they sold, and while they sold to the general public according to the proof, except a small quantity, yet that was caused by the fact that the public did not call for more.

"The proof shows that third parties, the wives of some of the hands, erected a tent and ran a boarding house themselves and bought groceries at the commissary. The record is silent as to whether or not all these accounts were paid. Of course, boarding these negroes out there —they furnished them at thirty dollars a month—there is no reason on earth why a profit could not have been made if it had been run and properly conducted. . . . Our court may hold—I do not know what they are going to hold—as to groceries furnished and handled as they were furnished and handled in this case that the surety on the contractor's bond will be liable for them; until they so hold, my opinion is that it is not the law, and it is not fair to the surety company, it is not in contemplation of the law and I shall not so hold.

"It is so easy to run a commissary out there where negroes are around, fill it up full of groceries, and charge folks looking after it, and also looking after the taking in of the teams and keeping time, and stuff be squandered and stolen and lost sight of, and it is not fair that a surety company, who is guaranteeing the performance of this contract, should be held to the merchant who sells the contractor anything that he may want."

The evidence warrants the chancellor in finding that the goods were sold for a profit; that they were sold to any person who came along and wanted to buy them; that some of the goods were sold to other boarding-house-keepers in the camp, the amount of which is not made clear in the proof, the witnesses saying it cannot be told. It is further in proof that some of the laborers left camp in debt to the commissary, the amount purchased exceeding their labor, and this amount is not disclosed. There is also testimony to the effect that the work being

done was on a road through a settled country, and that stores were in convenient reach.

It is clear that the accounts shown in this record, and the facts shown with reference thereto, were not within the stipulation of the bond by the bonding company, the United States Fidelity & Guaranty Company, and therefore the United States Fidelity & Guaranty Company is not obligated to pay such accounts.

The judgment of the lower court will therefore be affirmed.

*Affirmed.*