J. F. TOLTON INV. CO. v. MARYLAND CASUALTY CO. et al.

INDEPENDENT GAS & OIL CO. v. MARYLAND CASUALTY CO. et al.

No. 4909.  Decided December 4, 1930.  (293 P. 611.)

*Bagley, Judd & Ray,* of Salt Lake City, for appellants.

*Wm. Story, Jr.,* and *Benjamin Crow,* both of Salt Lake City, for respondents.

CHERRY, C. J.

These actions are to recover upon certain accounts incurred by the subcontractor during the course of certain highway construction work which it failed to pay and for which the plaintiffs seek to charge the surety upon the subcontractor's bond. Below the plaintiffs had judgment, from which the surety has appealed. There are two actions tried together in this court by stipulation of the parties.

Farr, Lashus & Farr subcontracted with the general contractor for the construction of about eight miles of public highway in Beaver and Millard counties for $26,620.50. To secure the performance of the contract, etc., the appellant Maryland Casualty Company, as surety, for compensation, executed a bond conditioned that the subcontractor "shall well and truly pay all and every person furnishing material or performing labor in and about the construction of said roadway all and every sum or sums of money due him, them or any of them for all such labor and materials for which the subcontractor is liable."

The appeals present the questions whether certain disputed items for which plaintiffs had judgment against the surety are within the obligation of the surety's undertaking. These disputed items are grouped as follows: (1) Food and

supplies furnished and used in a boarding house conducted by the subcontractor for the benefit of laborers on the work; (2) money and merchandise paid and delivered to workmen in payment of their wages on the order of the subcontractor; (3) labor and repairs and sundry small parts and accessories for autos and trucks used in the work; bolts, nuts, belt, wire rope, steel bars, etc., used in the work; (4) gasoline, oil, and grease used on the subcontractor's machinery; (5) hauling coal from railroad to construction camp, and drayage on oil and grease; (6) rental for engine use on job.

The extent of the surety's liability in cases of this kind has been before the American courts in many cases. The decisions are conflicting and are too numerous to be reviewed here. A recent case in the Supreme Court of Wyoming contains an able and exhaustive review of the cases on the subject with conclusions that meet with our approval. *Franzen* v. *Southern Surety Co.*, 35 Wyo. 15, 246 P. 30, 46 A. L. R. 496. It may be added that the conflict of opinion in a great measure is due to the different standards of interpretation applied to the contract of the surety. Some courts have construed the contract strictly in favor of the surety, others have applied the rule appropriate to mechanic's lien statutes, while a greater number, especially in later cases, have adopted the rule that such contracts should be liberally construed in favor of the persons for whose benefit the bond was given. *United States, for Use of Hill*, v. *American Surety Co.*, 200 U. S. 197, 26 S. Ct. 168, 50 L. Ed. 437; *Brogan* v. *National Surety Co.*, 246 U. S. 257, 38 S. Ct. 250, 62 L. Ed. 703, L. R. A. 1918D, 776; *Illinois Surety Co.* v. *John Davis Co.*, 244 U. S. 376, 37 S. Ct. 614, 61 L. Ed. 1206; *United States F. & G. Co.* v. *California-Arizona Const. Co.*, 21 Ariz. 172, 186 P. 502; *Wiseman* v. *Lacy*, 193 N. C. 751, 138 S. E. 121; *United States F. & G. Co.* v. *Henderson County* (Tex. Com. App.) 276 S. W. 203; *Franzen* v. *Southern Surety Co.*, supra; *Clatsop County* v. *Fidelity & Deposit Co.*, 96 Or. 2, 189 P. 207.

Our own court is committed to the rule that the contract of a surety, for hire, is to be strictly construed against the surety. *Walker Realty Co.* v. *American Surety Co.*, 60 Utah 435, 211 P. 998; *Murray City* v. *Banks,* 62 Utah 296, 219 P. 246.

The obligation of the bond in question is that the subcontractor "shall well and truly pay * * * every person furnishing material or performing labor in and about the construction of said roadway * * * for which the subcontractor is liable." The questions to be decided are whether persons furnishing particular articles in connection with the construction of the roadway are within the obligation of the bond. The language of the bond clearly imports more than payment for the materials and labor which go directly into the completed work. Its essential representation is that all persons furnishing labor or materials to the subcontractor in connection with the performance of its contract shall be paid. And this contemplates a performance of the contract according to customary practices. Modern construction work is accomplished largely by the use of machinery and mechanical power. In the larger undertakings elaborate organization is required involving much preliminary preparation and expenditure. It is often necessary to construct lines of communication and travel and to establish camps. The assembling of equipment and its maintenance is a common necessity. When engines and motors are employed, fuel and lubrication are indispensable. These and other incidentals go but indirectly into the finished job, but they are all necessary, and are commonly understood to be involved in the usual method of doing such work. And, when men contract concerning the labor and materials furnished "in and about" the construction of particular work, it is vain to say that they did not mean to include all of the preliminary and incidental work necessary to the finished job.

What we think is the correct rule, supported by the great weight of authority, is that such contracts are to be con-

strued with great liberality in favor of the persons dealing with contractors, and that sureties should be held for labor and materials furnished the contractor which proximately relate to the performance of the contract and contribute to, and are reasonably appropriate or necessary to, its completion, even though such labor or materials are not applied directly to the finished job. This does not include liability for money loaned the contractor, nor materials furnished which from their nature and use will not be consumed in the work. But it does include a wide range of incidentals which form no component part of the finished structure, but are commonly understood to be appropriate and necessary when such construction work is carried on according to customary and approved practices.

The first class of items in dispute is groceries and supplies furnished for a boarding house conducted by the subcontractor for which judgment was rendered against the surety. It was stipulated that the construction work referred to in the bond was conducted at a point twenty-two miles distant from any boarding house accommodations and that the subcontractor established and conducted at its camp a boarding house for the use and benefit of the men employed by it on the work; that the groceries and supplies in question were delivered to the subcontractor at the boarding house, where the same were prepared and served to the laborers employed on the work.

There is some conflict in the cases, but the great weight of authority is that such claims are chargeable against the surety. *Brogan* v. *National Surety Co.*, 246 U. S. 257, 38 S. Ct. 250, 62 L. Ed. 703, L. R. A. 1918D, 776; *Overman & Co.* v. *Maryland Casualty Co.*, 193 N. C. 86, 136 S. E. 250; *National Surety Co.* v. *Arizona Grocery Co.*, 32 Ariz. 399, 259 P. 404; *Fidelity & Deposit Co.* v. *Bailey-Pleasants Co.*, 145 Va. 126, 133 S. E. 797; *Clatsop County* v. *Fidelity & Deposit Co.*, 96 Or. 2, 189 P. 207; *Southern Surety Co.* v. *Guaranty State Bank* (Tex. Civ. App.) 275 S. W. 436; *McPhee* v. *United States*, 64 Colo. 421, 174 P. 808; *Bricker*

v. *Rollins & Jarecki,* 178 Cal. 347, 173 P. 592; *Franzen* v. *Southern Surety Co.,* 35 Wyo. 15, 246 P. 30, 46 A. L. R. 496; *Union Indemnity Co.* v. *State* (Fla.) 127 So. 307.

In most of the cases cited it appeared that it was necessary for the contractor to maintain a boarding house for his workmen, and that the cost of their board was deducted from their wages. It is contended by the surety here that, admitting the liberal rule of construction of its liability in favor of the plaintiffs and the validity of the authorities cited, the claim in question for groceries and supplies was not sufficiently proved to establish the liability of the surety. Attention is called to a statement of the court in *Brogan* v. *National Surety Co.,* supra, to the effect that groceries and supplies furnished to a contractor who operates a commissary or boarding house as an independent enterprise for separate and additional profit would be a matter independent of the contract, and not covered by the bond. And *Watkins* v. *United States F. & G. Co.,* 138 Miss. 388, 103 So. 224, to the same effect is cited. We agree that a charge for supplies so furnished could not be sustained against the surety. But that is not the case here. The facts stipulated concerning the matter are that there were no boarding house accommodations within less than twenty-two miles from the work, that the subcontractor established and conducted boarding house and other accommodations for the use and benefit of its workmen, and that the supplies furnished were actually consumed by the workmen employed. In one of several references to the boarding house the stipulation describes it as "their boarding house necessarily conducted by them in connection with and as a part of the construction work carried on by them."

We think the stipulation negatives the conducting of a boarding house as an independent enterprise for profit. Whether the subcontractor made a specified charge against its workmen for board which was deducted from their wages, or whether it employed them upon the basis of wages with board furnished, does not appear, and in our opinion

is immaterial. We think from the facts stipulated it is a reasonable inference that one or the other was done. At any rate, the stipulated facts were sufficient to prima facie establish the fact that the maintenance of the boarding house, under the circumstances, was reasonably appropriate and necessary to the prosecution of the work, and that groceries and supplies furnished for and used therein were materials furnished "in and about the construction of said roadway," and therefore within the obligation of the bond.

The next item of dispute is a claim for money and merchandise advanced to workmen for which the surety was held liable. It was stipulated that the subcontractor agreed with one of the plaintiffs that the latter should advance to the workmen employed in the job money and merchandise from time to time to apply on their wages, which was to be charged by the plaintiff against the subcontractor, and by the latter deducted from the amount due such workmen for their wages for the current month; that pursuant to the agreement the plaintiff did make advances to workmen between April 1, 1925, and October 17, 1925, the amounts of which were by the subcontractor deducted from the wages due the respective workmen for the monthly periods during which the advances were made; that all of the advances so made by the plaintiff up to September 1, 1925, were repaid by the subcontractor, but that the sum of $907.11 so advanced between September 1 and October 17, 1925, had not been paid.

The advances in question were not made to the subcontractors, but to its workmen. If the claim is to be sustained, it must be on the theory of an assignment of the laborers' claims to the plaintiff. It is well-settled law that one who lends money to a contractor for the purpose of buying material or paying for labor employed in the performance of his contract, stands only in the position of a general creditor, and is not secured by the contractor's bond. It is contended by the surety here that the transaction between the plaintiff and the subcontractor amounted to no more than

a loan of the money and merchandise advanced to the workmen by the plaintiff, and that the claim is not within the obligation of the bond. But we think there is a material difference between a case of lending money to a contractor to carry on his work and the arrangement of the parties as stipulated in this case. In the case of merely lending money, the materialmen or laborers are not parties to the transaction, and ordinarily have no knowledge of it. But the arrangement in the case at bar was such that the laborers knew of it and were participants in it. There is therefore a basis for the conclusion that the transaction results in an equitable assignment of the claims of the laborers to the plaintiff. This view is supported by numerous cases.

A claim based on facts similar to those of the present case was sustained against the surety in *United States F. & G. Co.* v. *United States,* 231 U. S. 237, 34 S. Ct. 88, 58 L. Ed. 200. There the claimant, under arrangement with the contractor, maintained a commissary at the place of work from which the laborers were supplied with provisions and merchandise. An account of the articles furnished, approved by the workmen, was furnished the contractor who deducted the amount from the wages of the workmen with their consent and credited the claimant therewith. This was held to constitute an assignment of the laborers claims to the claimant, and the surety on the contractor's bond was held liable for the advances.

In *Hansen* v. *Remer,* 160 Minn. 453, 200 N. W. 839, where the contractors became indebted to their workmen and delivered to each of them a statement of the amount due in the form of a labor order which was deducted from his wages, and the orders were indorsed and transferred to certain merchants in exchange for goods pursuant to previous arrangements with the contractors, the court, held that the transaction operated as an assignment of the amount of the labor claims represented by the orders, and the holders of the orders were subrogated to the right of the

laborers to recourse on the bond to secure the payment of their wages.

In *Hess & Skinner Eng. Co.* v. *Turney* (Tex. Civ. App.) 207 S. W. 171, the facts were that during the progress of the work certain local merchants, the contractors, and the laborers entered into an agreement whereby the merchants were to furnish the laborers goods, the contractors were to pay for the same out of wages due and to become due such laborers, and deduct the amount of such payments from the wages of the respective laborers. A judgment in favor of a merchant for goods so furnished was held valid upon the ground that the transaction amounted to an equitable assignment to the merchant of the claims of the laborers. In the same case a claim for money loaned by a bank to the contractors for the purpose of, and which was used for, paying wages due laborers, was denied upon the ground that the laborers were not parties to the transaction.

A contrary result was reached upon a similar state of facts in *Carter County* v. *Oliver-Hill Const. Co.*, 143 Tenn. 649, 228 S. W. 720.

For the reasons given, we conclude that there was no error in holding the surety liable for the claim mentioned.

The next group of items disputed by the appellant includes labor and repairs and sundry small parts and accessories for autos and trucks used in the work, also bolts, nuts, belt, wire rope, steel bars, etc., used in the work. One particular item included was a charge of $36 for labor in putting tires on trucks, and another was for bolts and nuts used on or about the contractor's machinery on said project, amounting to $34.25. Claims for tires furnished for a scraper, a wall tent, a coffee urn, and a bicycle were denied. The other items now questioned were stipulated to be various articles of hardware, machinery, machinery parts, accessories, and equipment such as iron bars, steel bars, belt lacing, water hose, check valves, injectors, drills, bolts, nuts, packing, rivets, tools, steel tape, blocks, feed glasses, gaskets, wire rope, belts, bushings, and iron single trees, amounting

to $221.01, and that all were purchased by the subcontractor in connection with its work, and were actually used by it in its work under its subcontract.

The principal argument advanced against holding the surety for this class of items is that machinery, tools, and equipment furnished the contractor, unless consumed on the job, are not within the terms of the surety's undertaking. In other words, the obligation of the surety does not extend to liability for permanent equipment furnished the contractor which outlasts the job and is available for future use. And it is contended that the burden of proving that the materials furnished were consumed on the job in connection with which the bond was given is upon the claimant, which, in the present case, was not sustained.

As a general proposition, bonds of this kind do not secure payment for permanent equipment furnished the contractor. But there is a class of labor and material in connection with the maintenance and repair of equipment which is within the bond. The purpose and intent of the bond is to secure payment for those things which go into the work or contribute to its completion. Hence it is held that minor and inexpensive repairs which do not in any true sense add to the value of the equipment, but which are incidental to the use of machinery, are within the obligation of such bonds. *Maryland Casualty Co.* v. *Ohio River Gravel Co.* (C. C. A.) 20 F. (2d) 514; *Miller* v. *Bonner,* 163 La. 332, 111 So. 776; *Columbia County* v. *Con. Contract Co.,* 83 Or. 251, 163 P. 438; *Stryker* v. *Tolliver & K. M. Co.,* 77 Colo. 347, 236 P. 993; *Western Material Co.* v. *Enke* (S. D.) 228 N. W. 385.

We think the items in dispute were correctly held by the trial court to be within the rule laid down in the cases cited. That the articles were consumed in the work was sufficiently proved by the general description and value of them and the stipulation that they were all purchased by the subcontractor in connection with its work, and were actually used by it under its subcontract. It is ordinarily enough

for the plaintiff to prove in such a case that he furnished material reasonably fit and ordinarily required for the performance of the contract without further showing that it was actually used and consumed. *Standard Sand & Gravel Co.* v. *McClay*, 191 N. C. 313, 131 S. E. 754.

Next to be considered are the items for gasoline, lubricating oil, and grease furnished the subcontractor and used by it in its engines, motors, and trucks employed in connection with the construction of the highway. A portion of the gasoline and oil furnished was used by the subcontractor in hauling equipment from Ogden, Provo, Nephi, and Fillmore to the place of work, and the remainder was used for machinery, etc., employed at the place of work. The appellant surety disputes the entire claim and especially that part of it which includes the gasoline and oil furnished and used for transporting equipment to the place of use. There is no valid ground for distinction on account of the different purposes for which the materials were furnished and used. It was necessary to have equipment on the ground before it could be used. And to move machinery and equipment to the place of use is an expense proximate and appropriate to the completion of the work and necessarily involved in it.

Upon the question of whether the bond is liable for gasoline and oil furnished the contractor for use in the performance of his contract, there is some conflict in the cases, but the great weight of authority is that such claims are secured by the bond. *Maryland Casualty Co.* v. *Ohio River Gravel Co.* (C. C. A.) 20 F. (2d) 514; *Associated Oil Co.* v. *Commary-Peterson Co.*, 32 Cal. App. 582, 163 P. 702; *Acker* v. *Vanderboom*, 235 Ill. App. 417; *Smith* v. *Oosting,* 230 Mich. 1, 203 N. W. 131; *State ex rel. Penn Lubric. Oil Co.* v. *Lyle*, 222 Mo. App. 676, 5 S. W. (2d) 453; *Bartles-Scott Oil Co.* v. *Western Surety Co.*, 161 Minn. 169, 200 N. W. 937; *Overman & Co.* v. *Maryland Casualty Co.*, 193 N. C. 86, 136 S. E. 250; *Eagle Oil Co.* v. *Altman*, 129 Okl. 98, 263 P. 666; *Employers' Casualty Co.* v. *Rockwall County*

(Tex. Civ. App.) 300 S. W. 148; *National Surety Co.* v. *Bratnober Lbr. Co.,* 67 Wash. 601, 122 P. 337; *Franzen* v. *Southern Surety Co.,* 35 Wyo. 15, 246 P. 30, 46 A. L. R. 496.

The claims for hauling coal from the railroad to the construction camp, and for drayage on oil and grease, were also proper charges against the surety. *London & Lancashire Ind. Co.* v. *State,* 153 Md. 308, 138 A. 231; *Franzen* v. *Southern Surety Co.,* supra.

The last item in dispute is the plaintiff's claim amounting to $74.25, the balance due for rental for an engine used on the job. As in the case of most of the other items in dispute, there is a conflict in the decisions as to whether a charge of this kind is within the contractor's bond. There are many cases upon the subject which are collected in an annotation found in 44 A. L. R. 381. Without further reference to the cases, it may be said that, under the liberal rule of interpretation to which we are committed, we conclude that the charge in question is within the obligation of the bond, and the surety was properly held liable therefor.

JUDGMENTS AFFIRMED.

ELIAS HANSEN, EPHRAIM HANSON, and FOLLAND, JJ., concur.

STRAUP, J.

I concur in part and dissent in part. By the terms of the undertaking or bond the surety company became liable only for "material" furnished and "labor" performed "in and about the construction" of the roadway. Though the surety company is a surety for hire, nevertheless, to ascertain the intention of the parties and to give effect to the contract accordingly, the surety, like every other party to a contract, is entitled to a fair and reasonable construction and interpretation of the contract as expressed by its terms. In considering the contract, the language and terms employed are to be given their ordinary and popular meaning, in the

absence of anything to show that they were used in a different sense. There is not anything ambiguous or technical by the terms "material furnished" or "labor performed," nor is there anything to show that such terms were used in a sense different from their ordinary and popular meaning. I thus see no occasion for the application of a broad or liberal construction or interpretation of the contract beyond the ordinary and popular meaning of the terms employed, or to so enlarge them as to include matters and things not fairly or reasonably included within such ordinary and popular meaning.

So viewing the matter, I concur in the holding that gasoline and oils furnished the contractor by merchants and dealers, and which were used by the contractor in the opperation of trucks and other instrumentalities in hauling gravel and other material used in the construction of the roadway and in operating crushers, mixers, and other machinery in carrying on and prosecuting the construction work, constituted materials furnished within the meaning of the surety's contract. Such materials bore a direct relation to the construction and building of the roadway, and like labor performed in and about the construction of it became in a sense a part of it.

I dissent from the holding that gasoline and oils, furnished the contractor by merchants and dealers at Ogden and at other remote points, and which were used by the contractor in moving his trucks and equipment from Ogden and other remote points to or near Beaver, several hundred miles, where the roadway was to be constructed, constituted materials within the contract. The furnishing of such gasoline and oils bore no direct, only a collateral and remote, relation to the construction of the roadway. They related only to the equipment of the contractor. It is argued that such gasoline and oils constituted materials within the meaning of the contract, for the reason that the contractor was required to move his equipment from Ogden to the place where the road was to be constructed. That, as it

seems to me, but emphasizes the proposition that such supplies were furnished for equipment wholly separate and apart from the construction work itself and not as a part of it. To say that such supplies in such case constituted a part of the construction work, it may as well be said that, if the contractor had no equipment, and equipments were necessary with which to do the work, one who sold the contractor machinery or other equipment with which to prosecute the work also had a claim for materials furnished within the meaning of the contract under consideration.

I am also of the opinion that groceries, meats, foodstuffs, and supplies furnished and sold by merchants to the contractor to board and lodge his workmen and employees performing work and labor in and about the construction of the roadway are not materials within the meaning of the contract, for the reason that such supplies are too remote and wholly collateral to the construction work. I concede there are cases contrary to such view and which support the holding of the prevailing opinion in such particular. Among them is the case of *Brogan* v. *National Surety Co.*, 246 U. S. 257, 38 S. Ct. 250, 62 L. Ed. 703, L. R. A. 1918D, 776, to which, however, three members of the court dissented. There are other cited cases to the same effect. Some of the cases cited in support of the proposition are based on statutes or contracts broader than, and different from, the terms of the contract or undertaking in hand. Some of them even deal with a different subject. In some of the cases where groceries, foodstuffs, and supplies furnished the contractor to board and lodge his men were held to be within the statute or contract, the rulings were made under statutes or contracts by which the surety guaranteed the payment, not only of materials furnished and labor performed, but also all claims against the contractor for supplies furnished him in equipment camps, or all supplies and tools furnished him, or all liabilities incurred by him in and about the construction work. Such rulings have little influence in considering terms of a contract such as

here involved. In the Brogan Case, and in some other cases following it, the terms of the contract in no substantial degree were broader than the terms of the contract under consideration. However, there are other courts which refused to follow the Brogan Case. Among them may be noted *Watkins* v. *U. S. Fidelity & Guaranty Co.*, 138 Miss. 388, 103 So. 224; *Southern Surety Co.* v. *Hotchkiss*, 187 Wis. 227, 201 N. W. 986; *Gary Hay & Grain Co.* v. *Carlson*, 79 Mont. 111, 255 P. 722; *Westling* v. *Republic Casualty Co.*, 157 Minn. 198, 195 N. W. 796; *Royal Indemnity Co.* v. *Day & Maddock Co.*, 114 Ohio St. 58, 150 N. E. 426, 430, 44 A. L. R. 374.

I think the better line of cases and the weight of judicial authority are against a holding that groceries, meats, foodstuffs, and other supplies furnished a contractor to board and lodge his men are materials within the language of statutes or contracts such as here employed. Such things are regarded as having only a collateral or remote, and not a direct, relation to the construction of the work or structure. *National Surety Co.* v. *United States* (C. C. A.) 228 F. 577, L. R. A. 1917A, 336; *Southern Construction Co.* v. *Halliburton*, 149 Tenn. 319, 258 S. W. 409; *Lillard* v. *Royal Indemnity Co.*, 219 Mo. App. 584, 282 S. W. 168; *Standard Oil Co.* v. *Remer*, 170 Minn. 298, 212 N. W. 460; *Westling* v. *Republic Casualty Co.*, supra; *Southern Surety Co.* v. *Hotchkiss*, supra; *Gary Hay & Grain Co.* v. *Carlson*, supra; *Watkins* v. *United States Fidelity & Guaranty Co.*, supra; *Monona County* v. *O'Connor*, 205 Iowa 1119, 215 N. W. 803.

The Brogan Case and other cases following it proceed on the theory that, where board and lodging at the place of the construction work are not available or reasonably convenient for the contractor's laborers and employees performing the work, and because thereof the contractor is required to furnish such board and lodging to carry on the work, groceries, meats, foodstuffs, and supplies furnished him to board and lodge his men may be regarded as materials furnished, when the contractor is not furnishing

board and lodging as an enterprise or pursuit independently of the construction work and not primarily for gain and profit. In other words, according to such authorities, whether groceries, foodstuffs, and supplies furnished a contractor to board and lodge his men may or may not be regarded as materials furnished within the meaning of a contract or a statute, is made dependent upon the ability of the contractor's employees and laborers to obtain board and lodging at or near the place of the construction work; if they may obtain such accommodations at or near the vicinity of the construction work, such supplies are not materials; if they may not, and such accommodations are furnished by the contractor, then such supplies furnished him are materials; and thus there are applied two rules of construction or interpretation of a contract by taking into consideration matters foreign and extrinsic to the contract, one where the work is performed at or in the vicinity of a settlement or town where accommodations may be had, and a different rule where they may not readily or conveniently be had. I think such a test in determining what supplies may or may not be regarded materials as used in a statute or contract such as under consideration is violative of familiar rules of construction and interpretation of statutes and contracts. 25 R. C. L. 961; 13 C. J. 524, 537, § 500.

Nor do I concur in the holding that rentals agreed to be paid by the contractor for the use of an engine or other machinery used in the construction of the roadway constitute "materials" or "labor" furnished within the meaning of the contract. Such matters, I think, also relate to mere equipment of the contractor, and hence not within the terms of the contract. To the effect is the well-considered case of *Royal Indemnity Co.* v. *Day & Maddock Co.*, supra. The case reported in 44 A. L. R. 374, on page 381, is there annotated. Recent cases from Iowa, Maryland, Nebraska, Oklahoma, and Wisconsin are there cited which support the main case. Cases are there also noted and cited where claims for rentals of equipments were held to be within the

terms of a surety's bond or undertaking. But in some of such cited cases the statute or bond was broad enough to include, not only material and labor furnished the contractor, but also for "tools and machinery" furnished the contractor; in some, for "all labor and material and all other obligations or liabilities incurred in the doing of the said work or performance of any of the things necessary" to the work; in some, for all "labor, material and supplies" furnished the contractor. In some of such cases rental of teams furnished the contractor were regarded as "labor furnished." In some, the bond or undertaking was broad enough to cover, not only payment of all laborers and materials, but also all persons who supplied the contractor with provisions and supplies in carrying on the work, or all just debts and demands incurred by the contractor in the performance of the work. The distinction between such statutes or bonds and the contract under consideration is manifest. If under the terms "material and labor furnished" claims of rentals of tools and machinery furnished the contractor are included, then I think the further conclusion follows that claims of machinery and equipments sold to a contractor are also included, for, as stated in the case of *Royal Indemnity Co.* v. *Day & Maddock, Co.*, supra, "we see no distinction between the status of one who leases an appliance to a contractor to facilitate the performance of his contract and one who sells an appliance to the same contractor for the same purpose. The ownership of the contractor in the appliance in the one case differs from the ownership of the contractor in the other only in degree." If there be no such distinction, then in the mad race of broad and liberal construction invoked by some courts of contracts of the character in hand I see not why money loaned the contractor with which to prosecute and carry on the work is not also "material" furnished the contractor or "labor performed" in the construction of the work. If, as argued by some courts —*Sherman* v. *American Surety Co.*, 178 Cal. 286, 173 P. 161, contrary to *Wood, Curtis & Co.* v. *El Dorado Lumber*

*Co.,* 153 Cal. 230, 94 P. 877, 16 L. R. A. (N. S.) 585, 126 Am. St. Rep. 80, 15 Ann. Cas. 382—rentals of tools and machinery to the contractor are within the terms of the surety's undertaking to pay for materials and labor furnished the contractor, on the stated ground that the surety is charged with notice as to whether the contractor possessed the required equipment and tools with which to do the work or would be compelled to rent or hire them, then it would seem that the surety likewise must be charged with notice as to whether the contractor had sufficient moneys or means to carry on the work or whether he would be required to borrow money for such purpose, and, if he was required to do so, then a claim for money loaned must also be regarded as "materials furnished" the contractor, all of which but leads to the conclusion that the terms "materials furnished" and "labor performed" should be so construed as to include all debts and liabilities incurred by the contractor in the performance of his contract, to which I cannot assent.

Under the stipulated facts, and as found by the court, I also do not concur in the holding that moneys advanced and goods and merchandise furnished by a merchant or dealer to laborers or employees of the contractor constituted "materials furnished" the contractor or "labor performed" within the meaning of the surety's contract. The facts as stipulated and found by the trial court are that the contractor and the merchant entered into an oral agreement or understanding that the merchant was to advance moneys and furnish goods and merchandise to laborers and employees of the contractor and charge such advances and goods to and in the name of the contractor who agreed to hold such amounts from the wages due such laborers and employees; that in pursuance thereof the merchant advanced moneys and furnished goods and merchandise to employees and laborers of the contractor who deducted such amounts from wages due such laborers and employees, and that the contractor failed to pay a balance due the merchant

which the contractor had deducted from wages due such laborers and employees. The laborers or employees were not parties to the agreement. The agreement was one wholly between the merchant and the contractor. The moneys advanced and goods furnished by the merchant were charged directly to the contractor. Not any of the moneys so advanced nor any of the goods so furnished was expended or used in or about the construction work. They were advanced and furnished solely for the personal use and benefit of the laborers and employees themselves and for the use and maintenance of their families, wholly separate and apart and independent of the construction of the roadway. The whole matter rested upon the mere oral promise of the contractor to pay the merchant for whatever moneys advanced and merchandise furnished by him to the laborers. No assignment of any kind was made, or agreed to be made, by any of the laborers or employees of their wages to the merchant. The holding in the prevailing opinion is that the transaction in effect constituted an equitable assignment of wages to the merchant who thus was entitled to be subrogated to the rights of the laborers to whom the money was advanced and the goods furnished; that, while the laborers and employees were not parties to the agreement, yet upon the transaction it was inferable that they knew of the arrangement between the merchant and the contractor and assented to the deduction from their wages of whatever amount of money was advanced or goods furnished them by the merchant. Cases are cited to the effect that, where the contractor, the merchant, and the laborers concerned were all parties to the agreement by the terms of which the merchant was to advance moneys or furnish goods and merchandise to the laborers and the amount thereof was to be deducted from wages due them, or where pay checks or orders by the contractor were given laborers for wages due them, and the checks or orders were, for value, negotiated by them to another, such other and the merchant in the other instance were entitled to be sub-

rogated to the rights of the laborers to whom the moneys were advanced and goods furnished or who negotiated the checks or orders. I have no disagreement with that. But here an equitable assignment is invoked on the doctrine of acquiescence and estoppel. I do not concur in that as against the surety under the terms of its contract. In my opinion, the transaction in question did not involve or constitute an absolute appropriation by the laborers of a debt or fund sought to be, or claimed to have been, assigned to the use of the claimed assignee, and hence the transaction did not constitute an equitable assignment. 5 C. J. 909-912.

Though it be assumed that the merchant may hold the contractor personally liable—he having agreed that the advances and merchandise be charged to him as they were and having promsied to pay them—yet to hold the surety also liable upon an arrangement or understanding and on promises merely between the merchant and the contractor, to which the laborers were not parties, and no absolute appropriation made by them of their wages to the merchant, and no parting by them of the power of control of the thing claimed to have been assigned, presents a different proposition and not an assignment either legal or equitable entitling the merchant as against the surety to be subrogated to the rights of the laborers.

A surety, whether for hire or not, still has the legal right by his contract to fix the terms and restrict the extent of his liability which may not be enlarged to meet defaults and exigencies of a case not fairly and reasonably embraced within the terms and language employed by his contract or written undertaking. Here the surety fixed and restricted his liability to "material furnished and labor performed in and about the construction of the said road." The term "material," as used in such class of cases, has a well-defined meaning. 39 C. J. 1385; Words and Phrases, First Series, Vol. 5, page 4410; Words and Phrases, Second Series, Vol. 3, page 326; 18 R. C. L. 918. Why enlarge it so as to include "tools, machinery and equipments" or the "rentals" of

them? Or so as to include all kinds of "appliances" or of "supplies," including groceries, etc., furnished the contractor to board and lodge his men, or for camp equipment? That there is a distinction between "materials furnished" and tools, or machinery, or equipment, or appliances, or supplies furnished the contractor, is, I think, manifest. Had it been the intention that all such things or some of them were to be included in the terms of the surety's contract, language readily could have been employed to do so and to indicate such an intent. As no such language was employed, I think it clear that none of such things was intended to be included. And to so construe the contract as to include them is but the making of a new contract for the parties so as to bring those who otherwise are not, within the protection of the surety's obligation.