Richard JOHNSON and Robert Johnson, dba Johnson Brothers, General Contractors, Plaintiffs, Appellants, and Cross–Appellees,

v.

GALLEGOS CONSTRUCTION COMPANY, Defendant and Appellee,

and

Aetna Casualty & Surety Company and Kiewit Western Company, Defendants, Appellees, and Cross–Appellants.

L.P. BIORN INC. OF WYOMING, Plaintiff, Appellant, and Cross–Appellee,

v.

GALLEGOS CONSTRUCTION COMPANY, Defendant and Appellee,

and

Aetna Casualty & Surety Company and Kiewit Western Company, Defendants, Appellees, and Cross–Appellants.

D.L. SMITH & SONS, INC., Plaintiff and Appellant,

v.

GALLEGOS CONSTRUCTION COMPANY, Aetna Casualty & Surety Company and Kiewit Western Company, Defendants and Appellees.

Nos. 870104, 870108 and 870361.

Supreme Court of Utah.

Jan. 9, 1990.

Gary H. Weight, Provo, for Johnson Bros.

Thomas R. King, Salt Lake City, for L.P. Biorn Inc. and D.L. Smith & Sons.

Robert F. Babcock, Mary Louise Le-Cheminant, Salt Lake, for Aetna Cas. & Sur. Co. and Kiewit Western Co.

HOWE, Associate Chief Justice:

These three consolidated cases raise the issue of whether rental charges for equipment used on a public construction project were within the scope of coverage of Utah Code Ann. § 63–56–38 at the time the charges were incurred in 1985.

The Utah Department of Transportation (UDOT) selected Kiewit Western Company to be the general contractor for a state highway construction project. Kiewit was required by the Utah Procurement Code to obtain a payment bond "in an amount equal to 100% of the price specified in the contract, ... for the protection of all persons *supplying labor and material to the contractor or its subcontractors* for the performance of the work provided for in the contract." Utah Code Ann. § 63–56–38(1)(b) (Supp.1983) (emphasis added).

Aetna Casualty & Surety Company executed the bond, dated January 7, 1985. The bond contained boilerplate which referred to Utah Code Ann. § 14–1–5 (1953) (as amended) and incorporated all the provisions of chapter 1, title 14 (public contractor's bond statute) "as if [chapter 1] were copied at length herein." Section 14–1–5 had in fact been repealed five years earlier. 1980 Utah Laws ch. 75, § 5. It had been replaced by chapter 56, title 63—the Utah Procurement Code. 1980 Utah Laws ch. 75, § 1. Only a few sections of chapter 1, title 14 remained in effect in 1985 and applied "only to those political entities not subject to the provisions of Chapter 56, Title 63." Utah Code Ann. § 14–1–17 (Supp.1983, 1986). UDOT is subject to chapter 56 of title 63.

Kiewit contracted with Gallegos Construction Company to supply gravel to the project. Gallegos in turn rented equipment from the three plaintiffs, Johnson, Biorn, and Smith. It would have made no difference to plaintiffs at the time the bond was issued, January 7, 1985, whether they were covered by title 14 as the bond indicated or title 63 as the Code provided. Both statutes protected persons supplying labor and material to subcontractors. The notice provisions in case of default by Gallegos were the same—written notice to the contractor within a ninety-day period. § 14–1–14(2) (Supp.1983); § 63–56–38(3) (Supp.1983). However, effective April 29, 1985, the notice provision of section 63–56–38(3) changed. An amendment to that section required written notice within ninety days to the contractor *and the surety company.* 1985 Utah Laws ch. 202, § 1.

Subsequent to the effective date of the amendment, Gallegos became delinquent in its payments to the three plaintiffs, who sought recovery under the bond in separate suits. Two plaintiffs complied with the notice provisions of chapter 1 of title 14 per the bond, but not with section 63–56–38(3), the statute applicable to UDOT contracts. Smith gave timely notice to both contractor and surety. However, the district court granted summary judgment to Kiewit and Aetna against Smith on a finding that rent for equipment was not "labor and materi-

al" within the scope of the coverage of section 63–56–38(1)(b) (Supp.1985). Johnson gave timely written notice to the contractor but not to the surety. He telephoned the surety, Aetna, who told him to write to the contractor. Biorn gave timely written notice to the contractor but untimely written notice to the surety. These two latter cases were tried.

In the *Johnson* case, the district court concluded as a matter of law that section 63–56–38(3) (1985) was the applicable statute; that Aetna was estopped from asserting that proper notice had not been given; that rental equipment fell within the scope of section 63–56–38; but that Gallegos was simply a materialman rather than a contractor or subcontractor and therefore fell outside the scope of section 63–56–38(3) (1985).

In the *Biorn* case, the judge concluded as a matter of law that rental equipment fell within the protection of the statute; that a materialman was a subcontractor for the purposes of the statute; that strict compliance with the notice provision was required; and that Biorn had not provided Aetna with timely notice.

The parties seek resolution of the following issues: (1) whether section 63–56–38 or section 14–1–14 applies for notice purposes, given the misleading information on the bond; (2) whether strict compliance is required if section 63–56–38 applies; (3) whether Gallegos is a "subcontractor" for the purposes of section 63–56–38; and (4) whether rent for equipment is "labor and material" within the scope of the coverage of section 63–56–38. Because we hold that section 63–56–38 is the applicable statute and that rental equipment is not covered by that statute, we need not reach the other issues.

The Utah Procurement Code states in pertinent part:

> [A] payment bond ... [shall be] executed by a surety company ... for the protection of *all persons supplying labor and material* to the contractor or its subcontractors for the performance of the work provided for in the contract.
>
> ....

> *Any person who has furnished labor or material* to the contractor or subcontractor for the work provided in the contract ... may sue on the payment bond....

Utah Code Ann. § 63–56–38(1)(b), (3) (Supp. 1985) (emphasis added).

Plaintiffs contend that the language "labor and material" should be construed to include rental equipment. We recently examined similar language in the *private* contractor's bond statute, section 14–2–1. *Graco Fishing and Rental Tools, Inc. v. Ironwood Exploration, Inc.,* 766 P.2d 1074 (Utah 1988). In that case, the plaintiff contended that rental charges for equipment fell within the protection of section 14–2–1, which provided: "[A]ny person who has furnished materials or performed labor ... shall have a direct right of action against the sureties upon such bond for the reasonable value of the materials furnished or labor performed...." *Id.* at 1078 (citing Utah Code Ann. § 14–2–1 (Supp.1985)).

In view of the common purpose of the private contractor's bond and the mechanic's lien statutes, we compared their provisions as suggested in an earlier decision, *King Brothers, Inc. v. Utah Dry Kiln Co.,* 13 Utah 2d 339, 341, 374 P.2d 254, 255–56 (1962). Our comparison in *Graco Fishing* showed:

> Prior to 1981, neither statute contained express language which made rental charges lienable.... [T]he mechanic's lien statute was amended in 1981 to make rental charges lienable. With that amendment, the two statutes diverged because the contractor's bond statute was not amended to include rental charges until 1985.
>
> ....

> Whether the Legislature's creation of that divergence was intentional or mere oversight is irrelevant. The fact remains that when this action arose, rental charges were not expressly subject to the contractor's bond statute and the liability it imposes.

766 P.2d at 1078–79.

The present case involves a public contract, while *Graco Fishing* involved a pri-

vate contract. Nevertheless, the narrow question of whether the legislature intended to include rent for equipment in the Procurement Code's provisions can be answered by a similar analysis.

The Utah Procurement Code was enacted in 1980 without an express provision for rental equipment. 1980 Utah Laws ch. 75. At that time, the mechanic's lien statute and the private contractor's bond statute were similarly devoid of express coverage for rental equipment. The mechanic's lien statute was amended in 1981 to include rental charges. 1981 Utah Laws ch. 170. No similar amendment was made to the Procurement Code. The private contractor's bond statute was amended in 1985 to include rental charges. 1985 Utah Laws ch. 219. The notice provisions of the Procurement Code were amended in 1985, but the legislature did not include an express reference to rental equipment. Whether this omission "was intentional or mere oversight is irrelevant. The fact remains that when this action arose, rental charges were not expressly subject to the [Procurement Code] and the liability it imposes." *Graco Fishing*, 766 P.2d at 1079.

Plaintiffs argue that the legislature had already recognized that rental equipment was covered by the statute and so had no need to expressly mention it in the 1985 amendment. They rely on *J.F. Tolton Investment Co. v. Maryland Casualty Co.*, 77 Utah 226, 238, 293 P. 611, 615 (1930), in which this Court construed "labor and material" in the language of a bond to include an engine rental. In that case, the surety executed a private bond conditioned that the subcontractor "shall well and truly pay all and every person furnishing material or performing labor in and about the construction of said roadway all and every sum or sums of money due him, them or any of them for all such labor and materials for which the subcontractor is liable." 77 Utah at 228, 293 P. at 611–12. The Court relied on this expansive language in concluding that an engine rental charge was within the obligation of the bond. We are not convinced that the 1985 legislature intended this Court's interpretation of broad language in a surety's bond in 1930 to be the authoritative interpretation of the same language in a statute enacted half a century later.

We conclude that in 1985, the term "labor and material" as used in Utah Code Ann. § 63–56–38 did not include rent for equipment. We affirm the Smith judgment below. We also affirm the Biorn and Johnson judgments based on our conclusion that rent for equipment falls outside the scope of the statute.

HALL, C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.