**DENNIS DILLON OLDSMOBILE, GMC, INC., Plaintiff and Respondent,**

v.

**Frank T. ZDUNICH, dba Mountain View Motors, Occidental Fire & Casualty Company, Curtis W. Wilkin and Western Surety Company, Defendants and Appellants.**

**AMERICAN MANUFACTURERS MUTUAL, Plaintiff and Respondent,**

v.

**RESORT CAMPERS, LTD., Des Townsend, Glen Hatch, Roger T. Russell, Tom Vogel, Lewis Ted Cowley, Dale Christiansen, John W. Whiteley, Gwyn D. Davidson, and United Bank, a Utah corporation, Defendants and Appellants.**

Nos. 17886, 18262 and 18263.

Supreme Court of Utah.

July 20, 1983.

R. Mont McDowell, Salt Lake City, for defendants and appellants.

Steven B. Elggren, Salt Lake City, for plaintiff and respondent.

DURHAM, Justice:

This action involves two cases which were consolidated on appeal, each of which requires a determination of the nature and extent of a surety's liability under a motor vehicle dealer's bond issued pursuant to U.C.A., 1953, § 41–3–16(1). In *Dennis Dillon Oldsmobile, GMC, Inc. v. Zdunich* (the *"Dillon"* case), the trial court held that there was no aggregate limitation on the surety's liability on the bond, finding instead that the surety's potential liability was a maximum of $20,000 per claim. In *American Manufacturers Mutual v. Resort Campers, Ltd.* (the *"AMM"* case), the trial court held that the surety's aggregate liability was limited to $20,000 for all claims arising in a specific annual period, commencing with the bond's issuance and continuing thereafter with each annual renewal of the bond. We affirm the judgment of the trial court in the *Dillon* case and reverse that in the *AMM* case.

In the *Dillon* case, the surety, Occidental Fire and Casualty Company ("Occidental"), issued a motor vehicle dealer's bond on April 28, 1977. The bond listed Frank T. Zdunich dba Mountain View Motors as the principal and was in the penal sum of $20,000. On June 11, 1979, Dennis Dillon Oldsmobile, GMC, Inc., purchased an automobile from Mountain View Motors. Mountain View Motors never transferred title. On November 30, 1979, Dennis Dillon Oldsmo-

bile, GMC, Inc., filed suit against Mountain View Motors and Occidental. Occidental defended the action on the ground that a prior payment of $20,000 to another claimant relieved Occidental of any further liability under the bond. In granting a motion for summary judgment in favor of Dennis Dillon Oldsmobile, GMC, Inc., the trial court found that:

> [T]he limit of liability on the part of the surety under such bond is $20,000 per claim, and the payment by the surety of one such claim in the amount of $20,000 does not relieve said surety of liability on any other such claim.

Occidental now appeals that ruling, claiming that the trial court erred in not holding that its aggregate liability for all claims is limited to $20,000.

In the *AMM* case, the surety, American Manufacturers Mutual Insurance Company ("American"), issued a motor vehicle dealer's bond on October 31, 1978. The bond listed Dick and LaVonne Noren dba Central R.V. Sales as the principal and was in the penal sum of $20,000. Several purchasers filed claims against Central R.V. Sales, the total of which exceeded $20,000. On May 28, 1981, American filed a declaratory action requesting a ruling by the trial court that its aggregate liability for all claims was limited to $20,000, and that a deposit of $20,000 with the clerk of the court would extinguish or satisfy American's liability under the bond. On December 24, 1981, the trial court issued a Memorandum Decision in which it held that: (1) the language of the bond was ambiguous and therefore the provisions of the statute must be read together with the language of the bond, and (2) under the terms of the statute and the bond, American's aggregate liability for all claims arising during a specific annual period was limited to $20,000 for each annual period, commencing with the bond's issuance and continuing thereafter with each annual renewal. The various claimants on the bond appeal that decision.

Of the various claims of error asserted by the parties on appeal, the issue which is determinative of both cases is as follows: Is the language of the bonds in the present case more comprehensive with respect to the sureties' liability than is required by § 41–3–16(1) and, if so, is the extended coverage under the bonds inconsistent with the statute?

The present version of § 41–3–16(1) states:

> (1) New Motor Vehicle Dealer's and Used Motor Vehcle Dealer's Bond: Before a new motor vehicle dealer's license or used motor vehicle dealer's license is issued the applicant shall file with the administrator a good and sufficient bond in the amount of $20,000 with corporate surety thereon, duly licensed to do business within the state, approved as to form by the attorney general, and conditioned that the applicant will conduct business as a dealer without fraud or fraudulent representation, and without violation of this chapter. The bond may be continuous in form, and *the total aggregate liability on the bond shall be limited to the payment of $20,000.*

U.C.A., 1953, § 41–3–16(1) (emphasis added).[1] None of the parties contends that the statute does not limit a surety's aggregate liability on a bond to $20,000. However, the present dispute focuses on the effect of the language of the bonds used in the present cases, which differs from and does not track the exact language of the statute.

The language of the bonds in the *Dillon* and *AMM* cases is identical and reads as follows:

> KNOW ALL MEN BY THESE PRESENTS: That we, [the principal] and [the surety], a Surety Company qualified and authorized to do business in the State of Utah as Surety, are jointly and severally held and firmly bound to the people of the State of Utah to *indemnify any and all* persons, firms and corporations *for any loss suffered* by reason of

---

**1.** This version of § 41–3–16(1) contains only minor changes in style from the 1977 version, which changes are not relevant to the present case. For the most current version, see U.C.A., 1953, § 41–3–16(1) (Interim Supp.1983).

violation of the conditions hereafter contained, in the penal sum of Twenty Thousand Dollars ($20,000) ... for the payment of which, well and truly to be made, we bind ourselves ...

THE CONDITION OF THIS OBLIGATION IS SUCH, That,

. . . .

NOW, THEREFORE, if the above bounden principal shall obtain said license to do business ... and shall well and truly observe and comply with all the requirements and provisions of ... Chapter 3, Title 41, Utah Code Annotated, 1953, and *indemnify any and all* persons, firms and corporations *for any loss suffered* by reason of the fraud or fraudulent representations ... and shall pay *all* judgments and costs adjudged against said principal on account of fraud or fraudulent representations and for *any* violation or violations of said law during the time of said license and all lawful renewals thereof, then the above obligation shall be null and void, otherwise to remain in full force and effect.

(Emphasis added.)

In a similar case, this Court has stated as a general proposition that:

In situations where a bond has been given in compliance with some statutory provision the provisions of the statute are read in connection with the provisions of the bond to determine the nature and extent of the surety's liability. *Home Indemnity Co. v. State of Missouri,* 8 Cir., 78 F.2d 391, 393, where the court held: "The scope of the surety's obligation under such a statutory bond is prescribed by the statute in compliance with which it is given and by the language employed in the bond defining it." (citing numerous cases.) [sic]

*Zele v. Industrial Commission,* 102 Utah 164, 167, 128 P.2d 751, 752 (1942). That opinion also said:

But where a bond is by its terms more comprehensive than required by the statute the surety is liable to the full extent of the bond.

*Id.* at 167, 128 P.2d at 752 (citations omitted). The rule enunciated by the *Zele* case is in accord with that of numerous other jurisdictions and appears to be the general rule. *See, e.g., United States v. Continental Casualty Co.,* 139 F.2d 770 (4th Cir. 1944); *United States v. Merchants Mutual Bonding Co.,* 220 F.Supp. 163, 178–79 (N.D. Iowa 1963); *Clatsop County v. Feldschau,* 101 Or. 369, 199 P. 953 (1921); *Bamberg County v. Maryland Casualty Co.,* 173 S.C. 106, 174 S.E. 917 (1934). · *Accord Restatement of Security, Official Bonds* § 169 & comments a & b, § 170 comment b (reprint 1960 & Supp.1982–83).

■ The question now presented is whether the language of the bonds in the present case, set forth above, is more comprehensive with respect to the sureties' liability than is required by § 41–3–16(1). To aid in the interpretation of the meaning, force and effect of the language of the bonds, we resort to a rule of construction previously set forth by this Court:

Our own court is committed to the rule that the contract of a surety, for hire, is to be strictly construed against the surety.

*J.F. Tolton Investment Co. v. Maryland Casualty Co.,* 77 Utah 226, 230, 293 P. 611, 612 (1930) (citing *M.H. Walker Realty Co. v. American Surety Co.,* 60 Utah 435, 211 P. 998 (1922)). *See also* 1 G. Couch, *Couch on Insurance* § 15.8, at 644–49 & § 15.76, at 805–08 (2d ed. 1959 & Supp.1982); A. Stearns, *The Law of Suretyship* § 2.4 (5th ed. 1951). In the *M.H. Walker Realty Co.* case, *supra,* this Court stated:

The modern authorities seem to be almost a unit upon the proposition that a different rule of construction applies to different classes of sureties. In the case of a private or voluntary surety without compensation the surety is held to be a favorite of the law, and the contract, the performance of which he guarantees, is construed strictly in favor of the surety. *Strictissimi juris* is the term used to express the rule by which his liability shall be determined.

In the case of a surety who makes insurance a business for compensation,

the rule is exactly the reverse. Doubtful provisions of the contract, the performance of which the surety guarantees, are construed in favor of the insured.

*Id.* at 463–64, 211 P. at 1009–10.

The sureties argue that the above-quoted rule is inapplicable because they do not have absolute control over the exact language to be incorporated in the bonds they issue. It is true that § 41–3–16(1) requires that a motor vehicle dealer's bonds be "approved *as to form* by the attorney general . . ." (emphasis added). However, the statute does not prevent the sureties from drafting and proposing any particular language to be used in the bonds. It requires only that the attorney general approve the *form* of the bonds. It would be improper, for example, for the attorney general to fail to approve the form of a bond which contained language identical to that of the statute. Thus, we reject the sureties' argument on this point.

By the language of the motor vehicle dealer's bonds, the sureties in the present case bound themselves "to *indemnify any and all* persons, firms and corporations *for any loss suffered* . . . in the penal sum of Twenty Thousand Dollars . . ." (emphasis added). We hold, as a matter of law, that this language is not ambiguous. *See, e.g., Morris v. Mountain States Tel. & Tel. Co.,* Utah, 658 P.2d 1199 (1983) (stating that interpretation of a contract is a question of law). By the literal language of the bonds, the sureties rendered themselves liable up to a maximum of $20,000 for *any* loss suffered by *any and all* persons. In accordance with the general rule of construction referred to above, this language should be strictly construed against the sureties and in favor of the claimants. Furthermore, "[i]f the instant bond[s were] intended only to fulfill the statute, as [the sureties] insist, the parties could easily have drawn their contract in the exact wording of the statute." *Royal Indemnity Co. v. Special Service Supply Co.,* 82 Nev. 148, 152, 413 P.2d 500, 503 (1966).

In holding that, by the language of the bonds, the sureties extended their liability beyond that required by statute to $20,000 *per claim,* we follow the rationale previously stated in *Smith v. Bowman,* 32 Utah 33, 88 P. 687 (1907):

> Such an undertaking [in excess of the minimum required by statute], if not expressly authorized by statute, is, nevertheless, not prohibited. It is not against public policy or good morals, nor in contravention of any statute. *To hold such an undertaking valid and binding is only to compel the sureties to do the thing they bound themselves to do.*

*Id.* at 39, 88 P. at 689 (citation omitted) (emphasis added). The sureties' undertaking in the present case, in excess of the minimum required by statute, does not violate the terms or purpose of the statute or the public policy behind it. *See Western Surety Co. v. Redding,* Utah, 626 P.2d 437, 439 (1981) (stating that these bonds are intended to protect all persons doing business with a motor vehicle dealer). Thus, we hold that the sureties are bound by the language of the bonds.

We affirm the judgment of the trial court in the *Dillon* case and reverse that of the *AMM* case and remand the *AMM* case for further proceedings consistent with this opinion. No costs awarded.

HALL, C.J., and STEWART, OAKS and HOWE, JJ., concur.