**SHELTER AMERICA CORPORATION, a Colorado corporation, Plaintiff and Appellant,**

**v.**

**OHIO CASUALTY AND INSURANCE COMPANY, an Ohio corporation, Defendant and Respondent.**

**No. 860174-CA.**

Court of Appeals of Utah.

Nov. 20, 1987.

Dec. 9, 1987.

Rehearing Denied Dec. 9, 1987.

John A. Beckstead, Steven R. Ellinwood, John H. Rees, Callister, Duncan & Nebeker, Salt Lake City, for plaintiff and appellant.

Raymond M. Berry, John R. Lund, Snow, Christensen & Martineau, Salt Lake City, for defendant and respondent.

## AMENDED OPINION

Before BENCH, GREENWOOD and BILLINGS, JJ.

BENCH, Judge:

Plaintiff appeals and defendant cross appeals a trial court's order granting summary judgment in favor of plaintiff but limiting plaintiff's recovery. We affirm the summary judgment but remand for modification of the amount of the judgment.

Dewey and Bob's Mobile Homes ("Dewey and Bob's") applied to defendant Ohio Casualty and Insurance Company for a motor vehicle dealer's bond pursuant to Utah Code Ann. § 41–3–16(1) (1981). Defendant issued a bond with an effective date of December 12, 1977. The pertinent language of the bond reads as follows:

[Ohio Casualty and Insurance Company is] firmly bound to the people of the State of Utah to indemnify any and all persons, firms and corporations for any loss suffered by reason of violation of the conditions hereinafter contained, in the penal sum of [$20,000]....

In 1979, Dewey and Bob's entered into a dealer agreement with plaintiff Shelter America Corporation to provide for marketing of mobile home loan packages and a commitment of funds for retail financing of mobile home purchase contracts. Subsequently, in separate transactions, Dewey and Bob's sold seven fraudulent installment sale contracts to plaintiff. Plaintiff made claims against defendant on the bond, seeking recovery up to $20,000 on each of the seven fraudulent transactions. Defendant denied the claims were within the scope of the bond and alternatively asserted plaintiff had only one claim subject to the bond ceiling of $20,000. Plaintiff thereafter filed this action.

Both parties filed motions for summary judgment. After a hearing on November 13, 1985, the court granted plaintiff's motion but limited recovery to the $20,000 face amount of the bond. On appeal, plaintiff argues the trial court erred in limiting its recovery to a single claim of $20,000. On cross appeal, defendant argues mobile homes are not within the statutory definition of "motor vehicles" for the purposes of the motor vehicle dealer's bond and hence, plaintiff's claims are outside the scope of the bond. In the alternative, defendant asks this Court to affirm the ruling limiting recovery to $20,000.

"Motor vehicle" is defined in Utah Code Ann. § 41–3–7(1) (1981) as follows:

"Motor vehicle" means a vehicle intended primarily for use and operation on the public highways which is self-propelled; a vehicle intended primarily for operation

on the public highways which is not driven or propelled by its own power, but which is designated either to be attached to and become a part of, or to be drawn by a self-propelled vehicle; but not including farm tractors and other machines and tools used in the production, harvesting, and care of farm products.

Defendant argues a mobile home is not "intended primarily for operation on the public highways" and is therefore not a motor vehicle for the purposes of liability under a motor vehicle dealer's bond. In support, defendant cites the Utah Supreme Court's holding in *Thorp Finance Corp. v. Wright,* 16 Utah 2d 267, 399 P.2d 206 (1965). *Thorp* is clearly distinguishable. In *Thorp,* a New Mexico dealer of house trailers transported seven duplex residences to Utah and sold them to defendant. The duplexes were moved by jacking them up and putting them on wheeled dollies. Defendant attempted to avoid enforcement of the sales agreement by contending the dealer was not properly bonded as a motor vehicle dealer under section 41-3-16. In affirming a judgment ordering the repossession and sale of the seven duplexes, the Court held:

> To stretch a dwelling, wheel-less and motorless into a "motor vehicle" would be akin to saying that moving a furnished four or five-room house over the roads of Utah would make it a "motor vehicle."
>
> We think the trial court took the only reasonable and realistic interpretive approach by saying the *primary* purpose of the movement of these units was not to use our highways, but to plant the units terra firmawise to accommodate two small families, with two separate entrances and facilities.

399 P.2d at 207-208 (footnote omitted) (emphasis in original). In contrast to the duplexes in *Thorp,* the seven mobile homes in the instant case are each equipped with either 12 wheels and 6 axles or 6 wheels and 3 axles.

■ Furthermore, the state legislature has amended section 41-3-7(1) as follows: "Motor vehicle" means a vehicle intended primarily for use and operation on the public highways, and which is self-propelled; a vehicle intended primarily for operation on the public highways which is not driven or propelled by its own power, but which is designated either to be attached to and become a part of, or to be drawn by a self-propelled vehicle; *including mobile homes* but not including farm tractors and other machines and tools used in the production, harvesting, and care of farm products.

Utah Code Ann. § 41-3-7(14) (1987) (emphasis added). As of 1987, a mobile home is clearly a motor vehicle for purposes of section 41-3-7. The Utah Supreme Court has held "when the purpose of an amendment is to clarify the meaning of an earlier enactment, the amendment may be applied retroactively in pending actions." *State, Dep't of Social Servs. v. Higgs,* 656 P.2d 998, 1001 (Utah 1982); *see also Okland Constr. Co. v. Industrial Comm'n,* 520 P.2d 208 (Utah 1974). In cases of doubt or uncertainty, the title or preamble of a statute may be looked to as an aid in correctly interpreting and applying the statute. *Young v. Barney,* 20 Utah 2d 108, 433 P.2d 846 (1967). The preamble to Senate Bill 63, the 1987 legislation amending section 41-3-7, states, "An Act relating to motor vehicles; changing requirements for reporting sales; *clarifying definition section....*" (Emphasis added.) We hold that in the instant case, the 1987 amendment merely clarified the intended meaning of the earlier statute that a mobile home is included in the definition of a motor vehicle. Plaintiff's claims are therefore within the scope of the bond.

■ Plaintiff contends the trial court erred in limiting its recovery to the $20,000 face amount of the bond. Utah Code Ann. § 41-3-16(1) (1981), in pertinent part, provides, "The bond may be continuous in form, and the total aggregate liability on the bond shall be limited to the payment of $20,000." In 1983, this section was rewritten to read, "The total aggregate annual liability on the bond to all persons making claims may not exceed $20,000." Utah Code Ann. § 41-3-18 (1987), in pertinent part, also provides, "Succesive recoveries against a surety on a bond is permitted, but the total aggregate annual liability on

the bond to all persons making claims may not exceed the amount of the bond." These statutes clearly limit a surety's aggregate liability on a bond based on section 41–3–16(1).

However, in *Dennis Dillon Oldsmobile, GMC, Inc. v. Zdunich,* 668 P.2d 557 (Utah 1983), the Utah Supreme Court held the language of a motor vehicle dealer's bond may expand the liability of a surety beyond what is required under section 41–3–16(1). In *Dennis Dillon Oldsmobile,* the surety issued a bond with the identical language and value as the bond in the instant case: "to indemnify any and all persons, firms and corporations for any loss suffered ... in the penal sum of [$20,000]...." Plaintiff made a claim on the bond but the surety denied the claim on the ground that a prior payment of $20,000 to another claimant relieved it of any further liability under the bond. The Utah Supreme Court, construing the bond strictly against the surety,[1] concluded the surety extended its liability beyond that required by statute. The Court held that if the bond was intended only to fulfill the statute, as defendant insisted, "the parties could easily have drawn their contract in the exact wording of the statute." Id. at 561 (quoting *Royal Indem. Co. v. Special Serv. Supply Co.,* 82 Nev. 148, 152, 413 P.2d 500, 503 (1966)).

Defendant argues the holding in *Dennis Dillon Oldsmobile* is inapplicable because in that case there were multiple claimants whereas in the instant case plaintiff is the sole claimant. The Utah Supreme Court held, however, that the surety extended its liability to $20,000 *per claim,* not per claimant. *Id.*

■ Defendant then argues plaintiff filed only one claim, and therefore suffered only one loss. Contrary to defendant's argument, plaintiff suffered seven separate losses and incurred seven separate claims. At least five factors may be considered in determining whether a party has one or multiple claims. First, could a separate lawsuit have been filed for each claim? Plaintiff clearly could have filed seven sep-

arate lawsuits, but to avoid undue expense and undue burden on the courts, plaintiff filed its claims in one action. Second, are the claims based on separate or distinct acts? Each contract involved a different, unrelated purported mobile home and purported purchaser. Third, were plaintiff's reliance and damages caused by each separate transaction? In its complaint, plaintiff clearly indicated separate damages arising from its reliance on each contract. Fourth, could the trial court have made a finding of liability on one transaction but not on another? Although the court did not so find, actionable fraud could have been found on some of the transactions but not on others. Fifth, was the period of time involved indicative of one or multiple claims? Dewey and Bob's sold plaintiff the seven fraudulent contracts over a period of 18 months. *See generally Colbert County Hosp. Bd. v. Bellefonte Ins. Co.,* 725 F.2d 651 (11th Cir.1984); *St. Paul Fire and Marine Ins. Co. v. Hawaiian Ins. & Guar. Co.,* 2 Haw. App. 595, 637 P.2d 1146 (1981); *Burlington County Abstract Co. v. OMA Assoc., Inc.,* 167 N.J.Super. 398, 400 A.2d 1211 (App.Div.1979).

On the facts presented, plaintiff suffered seven separate losses, thereby incurring seven separate claims. In light of *Dennis Dillon Oldsmobile,* we hold the trial court erred in limiting plaintiff's recovery to the $20,000 face amount of the bond. Under the language of the bond, defendant extended its liability to $20,000 per loss.

The judgment of the trial court granting summary judgment to plaintiff is affirmed but the matter is remanded to the trial court with instructions to enter judgment for plaintiff against defendant for up to $20,000 per loss.

GREENWOOD and BILLINGS, JJ., concur.

---

1. "Our own court is committed to the rule that the contract of a surety, for hire, is to be strictly construed against the surety." *J.F. Tolton Inv.*

*Co. v. Maryland Casualty Co.,* 77 Utah 226, 230, 293 P. 611, 612 (1930).