**WESTERN SURETY COMPANY,**
**Plaintiff and Appellant,**

v.

**Joel MURPHY, Christopher Dowling, Brasher's Southern California Auto Auction, Denver Auto Auction, Shawn Patten, Yon Hee Lee, Colorado Auto Auction, Inc., Leon Stubbs, MJH Behzadi, Earl Snyder, Donna Curran, University of Utah Credit Union, and John Does 1 through 20, Defendants and Respondent.**

No. 870209–CA.

Court of Appeals of Utah.

May 25, 1988.

Robert L. Moody, Thomas Taylor (argued), Taylor, Moody & Thorne, Provo, for Western Sur.

Gary H. Weight (argued), Aldrich, Nelson, Weight & Esplin, Provo, for Donna Curran.

Bruce L. Richards, Salt Lake City, for University of Utah Credit Union.

Brent D. Young, Provo, for Colorado Auto Auction.

Douglas E. Wahlquist, Salt Lake City, for Fred Moss.

Irshad A. Aadil, Salt Lake City, for MJH Behzadi.

Ronald R. Stanger, Provo, for Earl Snyder.

Richard L. Hill, Provo, for Christopher Dowling.

David R. Ward, Bountiful, for Rocky Mountain State Bank.

Craig M. Snyder, Provo, for Denver Auto Auction.

Before GREENWOOD, ORME and BILLINGS, JJ.

## OPINION

GREENWOOD, Judge:

Plaintiff, Western Surety Company (Western Surety), appeals from a summary judgment entered in favor of defendant, Donna Curran (Curran), for recovery on a motor vehicle dealer bond in the amount of $5,812.25 plus $975.20 interest and $422.50 attorney fees. We affirm.

On June 2, 1982, Western Surety issued a motor vehicle dealer bond to Joel Murphy and Christopher Dowling dba Auto Sports. The bond indemnifies

> any and all persons, firms and corporations for any loss suffered by reason of violation of the conditions herinafter contained, in the penal sum of Twenty Thousand and no/100 Dollars ($20,000.00)....

On August 31, 1983, Western Surety filed a blanket rider with the Utah Department of Motor Vehicles to amend all of its bonds to state "the total aggregrate annual liability of this Bond regardless of the number of claims, may not exceed $20,000.00."

On May 7, 1985, Curran purchased a 1984 Mercury Topaz GS from Auto Sports. Curran paid $5,812.25 to Auto Sports, and Auto Sports failed to deliver title and registration to Curran within thirty days of the date of purchase. Western Surety filed this action on November 1, 1985 and tendered $20,000 to the court. The purpose of the action was to require Curran and other defendants to interplead to protect Western Surety from multiple claims and liability on the motor vehicle dealer bond.

One of the defendants, the University of Utah Credit Union, filed a motion for sum-

mary judgment. The court granted a partial summary judgment stating that Western Surety was liable on its bond up to $20,000 for each claimant. The court found no evidence that Auto Sports agreed to the blanket rider and that, under general contract law, the consent of both parties is required to cancel, alter, or supplant a contract. Therefore, the court held that Western Surety was bound by the original bond agreement and the rider was inoperative. Curran then filed a motion for summary judgment and requested $422.50 in attorney fees. The court acknowledged that it had previously ruled that Western Surety was liable up to $20,000 to each claimant. The court granted Curran's motion for summary judgment and awarded her attorney fees based on the clause in the bond which states "Said bounden principal shall also pay reasonable attorney fees in cases successfully prosecuted to judgment."

Western Surety claims that the trial court erred in concluding that: 1) Western Surety was liable on its bond to each claimant up to $20,000; 2) the blanket rider was not binding; 3) Curran was entitled to attorney fees. Western Surety also asserts that the trial court erred in granting the summary judgment because a genuine issue of material fact existed regarding whether the damages Curran suffered should be set-off by the value of the vehicle without title.

■ We first consider whether Western Surety was liable to each claimant for $20,-000 or if the bond limited Western Surety's liability to a total of $20,000 for all claims. In 1982, Utah Code Ann. § 41–3–16(1) (1982) stated that the "total aggregate liability on the bond shall be limited to the payment of $20,000." In 1983, the legislature amended the statute to provide that "the total aggregate annual liability on the bond to all persons making claims may not exceed $20,000." Utah Code Ann. § 41–3–16(1) (1983). In *Dennis Dillon Oldsmobile, GMC, Inc. v. Zdunich,* 668 P.2d 557 (Utah 1983), the Utah Supreme Court held that where the language of the bond extends the sureties' liability beyond that required by Utah Code Ann. § 41–3–16

(1982), the sureties are bound by the language of the bond. Similarly, this Court held that under the 1983 version of section 41–3–16(1), the language of the bond may expand the liability of the surety beyond that required by the statute and held that, in light of *Dennis Dillon,* the trial court erred in limiting plaintiff's recovery to the $20,000 face amount of the bond. *Shelter America Corp. v. Ohio Casualty and Ins. Co.,* 745 P.2d 843 (Utah Ct.App.1987).

Both *Dennis Dillon* and *Shelter America* involved bond language identical to the language of the bond in the instant case: "to indemnify any and all persons, firms and corporations for any loss suffered ... in the penal sum of [$20,000]...." Therefore, in accordance with those cases, we hold that the trial court did not err in concluding that Western Surety was liable to each claimant for up to $20,000, assuming the ineffectiveness of the rider.

■ Western Surety claims, however, that the blanket rider amended the surety bond policy to provide that Western Surety was only liable for a total aggregate amount of $20,000. We disagree. "[T]he parties to a contract may, by mutual consent, alter all or any portion of that contract by agreeing upon a modification thereof." *Rapp v. Mountain States Tel. & Tel. Co.,* 606 P.2d 1189, 1191 (Utah 1980). Proof of mutual assent is absent in the present case. Although Western Surety claims the blanket rider was filed with the Department of Motor Vehicles, Western Surety admits that it could not prove that the blanket rider was sent to Auto Sports. Further, the record contains no indication that Auto Sports assented to Western Surety's attempt to unilaterally alter the bond. We, therefore, hold that because there is no evidence that Auto Sports received notice of the blanket rider or assented to the alteration of the bond, the trial court correctly ruled that the blanket rider had no force or effect.

Western Surety also argues that the trial court erred in awarding Curran attorney fees because attorney fees were not recoverable under the bond or any applicable statute.

A contract's interpretation may be either a question of law, determined by the words of the agreement, or a question of fact, determined by extrinsic evidence of intent. If a trial court interprets a contract as a matter of law, we accord its construction no particular weight, reviewing its action under a correctness standard. However, if the contract is not an integration or is ambiguous and the trial court proceeds to find facts respecting the intentions of the parties based on extrinsic evidence, then our review is strictly limited.

*Seashores Inc. v. Hancey,* 738 P.2d 645, 647 (Utah Ct.App.1987) (quoting *Kimball v. Campbell,* 699 P.2d 714, 716 (Utah 1985)). "The primary rule in interpreting a contract is to determine what the parties intended by looking at the entire contract and all of its parts in relation to each other, giving an objective and reasonable construction to the contract as a whole." *Sears v. Riemersma,* 655 P.2d 1105, 1107–08 (Utah 1982).

■ The pertinent portion of the bond states that the surety and the principal are jointly and severally held and firmly bound to the people of the State of Utah to indemnify persons, firms and corporations for loss suffered by reason of violation of the conditions hereinafter contained....

....

[T]he ... bounden principal shall ... indemnify persons, firms and corporations ... for loss suffered by reason of ... any of the provisions of said Motor Vehicle Business Act ... and shall pay judgments and costs adjudged against said principal.... Said bounden principal shall also pay reasonable attorney's fees in cases successfully prosecuted to judgment.

The trial court, in this case, correctly concluded that the relevant provisions were not ambiguous and interpreted the bond as a matter of law. We agree with the trial court's resolution. Under the explicit terms of the bond, the principal is liable for attorney fees in cases successfully prosecuted to judgment. Moreover, the bond specifically states that the surety is jointly liable for loss suffered by a violation of the conditions contained in the bond. Consequently, we hold that under the unambiguous express provisions of the bond, Western Surety is liable for attorney fees. Even if there were an uncertainty with respect to the construction of the bond, that uncertainty would be construed in accordance with the general rule that the contract of a surety for hire is to be strictly construed against the surety. *Dennis Dillon,* 668 P.2d at 560–61; *Shelter America,* 745 P.2d at 846.

Finally, we address Western Surety's contention that the summary judgment was inappropriately granted because a genuine issue of material fact existed regarding whether the damages Curran suffered should be offset by the value of the vehicle without title. Issues that are not raised before the trial court may not be raised for the first time on appeal. *Bundy v. Century Equip. Co.,* 692 P.2d 754, 758 (Utah 1984); *James v. Preston,* 746 P.2d 799, 801 (Utah Ct.App.1987). The issue of whether Curran's damages should be offset by the value of the car without title was not raised before the trial court.[1] Therefore, this Court will not consider the issue on appeal.

Affirmed.

ORME and BILLINGS, JJ., concur.

1. During oral argument, counsel indicated that Denver Auto Auction held title to the car.