46 F.3d 1152
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Darren STREBEL, Plaintiff-Appellant,
v.
MILTON WAGSTAFF MOTOR COMPANY, INC., doing business as
Wagstaff's House of Toyota; Allied Mutual
Insurance company, a corporation; and
Gene Frier, Defendants-Appellees.
 No. 92-4115.
 United States Court of Appeals, Tenth Circuit.
 Jan. 19, 1995.
 
 Before BALDOCK, HOLLOWAY and KELLY, Circuit Judges.
 
 OPINION AND JUDGMENT[1]
 
 1
 Plaintiff-Appellant Darren Strebel brought this action against Defendant-Appellees Milton Wagstaff Motor Company, Inc. dba Wagstaff's House of Toyota (Wagstaff), its surety, Allied Mutual Insurance Company (Allied), and Gene Frier for odometer fraud pursuant to The Motor Vehicle Information and Cost Saving Act of 1972, 15 U.S.C.1901, et seq.[2] (the Federal Act), the Utah Motor Vehicle Act, 41 Utah Code Ann. 41-1a-101, and the Utah Consumer Sales Practices Act, 13 Utah Code Ann. 13-11-1, et seq. Complaint, 1/25, Appendix to Brief of Appellant (App.) at 2. After a bench trial, the district court held for Strebel and against Allied and Wagstaff that a fraudulent transaction had occurred, but he dismissed the claims against Frier. The trial judge entered the following findings of fact, inter alia:
 
 
 2
 2. On or about August 18, 1986, Frier acquired a certain 1983 JeepCJ7 motor vehicle ("VEHICLE"), VIN1JCCN87EXCT036148, from Morris Motors ("Morris"). At the time of the sale, Morris provided Frier with an odometer statement of the type required by 15 U.S.C.1981 et seq,. [sic] wherein Morris certified to Frier that the Jeep had then traveled 138,477 miles.
 
 
 3
 3. On or about January 1, 1988, Frier sold and conveyed the Jeep to [Milton Wagstaff Motor Company, Inc.]. At that time, the Jeeps [sic] odometer read 166,516.
 
 
 4
 4. On or about February 9, 1988 Wagstaff sold and conveyed the Jeep to plaintiff and in connection therewith, Wagstaff acting with the "intent to defraud" plaintiff, provided plaintiff with an odometer statement whereby Wagstaff represented to plaintiff that the Jeep had traveled 66,605 miles.
 
 
 5
 5. Plaintiff, in reasonable and foreseeable reliance upon the representations that were made to him by Wagstaff, without any knowledge of their falsity and without any reason to believe that the Jeep had then traveled more miles than were then stated in the odometer statement, purchased the Jeep from Wagstaffs [sic].
 
 
 6
 6. As a proximate result of Wagstaff's "intent to defraud", plaintiff suffered actual damages in the amount of $3,365.00. This figure represents the difference between the fair market value of the Jeep with 166,605 miles and the fair market value of the Jeep with 66,605 miles. This particular figure also reflects the trade in value plaintiff received for his old car at the time he purchased the Jeep.
 
 
 7
 7. Pursuant to 15 U.S.C.1989, actual damages are trebled for violations of the requirements imposed by 1981 etseq. Because this case involved the intent to defraud in regard to odometer readings, as prohibited by 1981 etseq., the actual damages in this case must be tripled. Therefore the actual damages in this case are $10,095.00 or which represents $3,365.00 times three.
 
 
 8
 8. Wagstaff is liable to plaintiff for the sum of $10,095.00, representing three times the amount of plaintiff's actual damages. Wagstaff is also liable for costs expended by plaintiff in the amount of $644.33.00, plus reasonable attorney's fees in the amount of $6,000.00[.]
 
 
 9
 [9.] During all of the events in question there was in force and effect to Wagstaff in its capacity as a motor vehicle dealer in the State of Utah a bond issued by Allied. Under the terms of that bond, Allied had bound itself in the sum of up to $20,000.00 to assure that Wagstaff would comply with all laws; including laws relating to commerce in motor vehicles, such as 15 U.S.C.1981 etseq. Allied agreed by its bond to indemnify any and all persons who have suffered actual damages by reasons of the violation of such laws and pay all judgments and costs for such damages adjudged against Wagstaff for violation of said laws. Accordingly, Allied is liable for all of the actual damages, costs, and attorney's fees that are assessed against Wagstaff.
 
 
 10
 [10.] Therefore, Allied is liable to plaintiff for plaintiff's trebled damages under the statute in the amount of $10,095.00. Allied is also liable for costs expended by plaintiff in the amount of $644.33.00, plus reasonable attorney's [fees] in the amount of $6,000.00.
 
 
 11
 App. at 117-19.
 
 
 12
 After the district court issued its findings and judgment, Strebel moved to amend the judgment to include additional attorney fees for trial time and post-trial efforts. Id. at 125-27. Allied moved to amend the judgment to reduce its liability as Wagstaff's surety from the trebled amount to the "actual damages" of $3,365, plus costs of $644.33 and attorney fees of $6,000 or a total of $10,009.33.[3] Id. at 141-42. The district court denied Strebel's motion, granted Allied's motion, and entered an amended judgment reducing Allied's liability as requested by Allied. Id. at 161, 163.
 
 
 13
 On appeal Strebel argues: (1) there was no basis for the district court to reduce the attorney fees award by one-third; (2) the district court abused its discretion by failing to grant attorney fees for time spent in trial and for post-trial work; (3) Allied is liable for the full amount of the judgment against Wagstaff (i.e., the trebled amount of damages ($3,365 X 3 = $10,095), plus costs and attorney fees); and (4) Strebel is entitled to an award of attorney fees for this appeal.
 
 II
 
 14
 The Reduction of the Amount of Attorney Fees
 
 
 15
 Before trial Strebel's counsel submitted an affidavit which detailed the time he spent on this case. App. at 65-99. According to the affidavit, the value of his services was $9,200. Id. at 69. During closing arguments counsel for Allied asked the district court to apportion the fees among the defendants. App. at 181. In response to that request, the court awarded fees of $6,000, stating:
 
 
 16
 Well, it seems to me, that there are, in a sense, two parallel Lawsuits that you've got pending, here: You've got one against the individual Defendant, and you've got one against Wagstaff's; and quite obviously, part of the work that you did was in reference to the individual Defendant, as well as Wagstaff's. And Wagstaff's ought not to be in a position to pick up the tab for work done in the Case generally, as it's applicable to the individual Defendant. And I think there's some virtue in looking at that.
 
 
 17
 It would seem to me, in trying to do a rough approximation, here, as to what one would ordinarily attribute to the one, and to the other, I think that I can, in good conscience--if conscience is ever good--to simply endeavor, in accordance with the Cases, to try to apportion the work: One against the Party against whom you had a successful Action, and one against a Party against whom you have no successful Action.
 
 
 18
 And it would appear to me, that in apportioning the total amount of work and trying to attribute what relates to one and what relates to the other, that it looks to me, like it's about a two-thirdsone-third kind of apportion amount.
 
 
 19
 So let's indicate that it would appear to me reasonable, under the circumstances, for the successful prosecution of the one case, that you are entitled to Attorneys fees in the sum of $6,000.00. App. at 183-84.
 
 
 20
 Strebel contends that the district court abused its discretion by reducing by one-third the amount of fees claimed. Brief of Appellant at 5-10. He argues that the time expended on the claim against Frier was necessary to successfully prosecute the claims against Wagstaff and Allied, and therefore he should be compensated for that time. Id. at 8. Alternatively, he argues that the matter should be remanded because the district court made insufficient findings. Id. at 10.
 
 
 21
 The Supreme Court has cautioned that "[a] request for attorney's fees should not result in a second major litigation." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). We "play[ ] a limited role in reviewing a trial court's award of attorney's fees. We customarily defer to the District Court's judgment because an appellate court is not well suited to assess the course of litigation and the quality of counsel." Mares v. Credit Bureau of Raton, 801 F.2d 1197 1200-01 (10th Cir.1986). The district court witnesses an attorney's "work first hand, ... and [thus] has far better means of knowing what is just and reasonable than an appellate court." Id. at 1201. Accordingly, an award of attorney fees will not be upset on appeal "unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.' United States v. Ortiz, 804 F.2d 1161, 1164 n. 2 (10th Cir.1986)." Cummins v. Campbell, --- F.3d ----, ----, No.92-5180, 1994 WL 715231, at * 6 (10th Cir. Dec.28, 1994).
 
 
 22
 In Hensley, the Supreme Court noted that the determination of reasonable attorney fees involves not only the consideration of the reasonable hours times a reasonable rate (the "lodestar"), but also involves "considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the results obtained.' " 461 U.S. at 434. The Court noted that the "results obtained" were especially important where a plaintiff prevailed on only some of the claims for relief.
 
 
 23
 We are persuaded by plaintiff Strebel's argument that the findings were insufficient to serve as a basis for the one-third reduction in the amount of the fees. We customarily defer to the trial judge's assessment "because an appellate court is not well suited to assess the course of litigation and the quality of counsel." Mares, 801 F.2d at 1200-01 (quoting Copeland v. Marshall, 641 F.2d 880, 901 (D.C.Cir.1980) (en banc)). Nevertheless, Federal Rule of Civil Procedure 52(a) requires the district judge sitting as the trier-of-fact to find the facts "specially." "The findings need not be set forth in elaborate detail, they only need be clear, specific, and complete' and inform the reviewing court of the basis for the decision." Penn v. San Juan Hosp., Inc., 528 F.2d 1181, 1186 (10th Cir.1975) (citations omitted). But Rule 52(a) does require "[t]he court to make sufficiently detailed findings to inform the appellate court of the basis of the decision and to permit intelligent appellate review." Krieger v. Gold Bond Bldg. Prod., 863 F.2d 1091, 1097 (2d Cir.1988).
 
 
 24
 While the record suggests that the trial judge may have correctly endeavored to award plaintiff attorney fees for the successful prosecution of his claims against Wagstaff and Allied, excluding any award for the unsuccessful claim against Frier, this is unclear. The judge did not sufficiently detail his calculations or reasoning to allow us to intelligently review the decision as contemplated by Rule 52(a). It must be determined whether the trial judge properly considered the time expended by counsel in the successful prosecution of the claims against Wagstaff and Allied. In Hensley, the Court agreed with a trial judge's rejection of "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon." 461 U.S. at 435-36, n. 11.
 
 
 25
 Accordingly we reverse the award of fees and remand this matter to the district court for further consideration and adequate findings explaining the basis of whatever fee determination is made thereon.
 
 III
 
 26
 Attorney Fees for Trial Time and Post-Trial Efforts
 
 
 27
 Plaintiff Strebel further argues that the trial judge abused his discretion by failing to grant any attorney fees for trial time and for work on post-trial matters. Strebel points to his motion to amend findings, make additional findings, and amend the judgment which included his request to increase the amount of attorney fees awarded and which cited his affidavit filed July 12, 1991, at the conclusion of trial and before final arguments on August 8, 1991. That affidavit detailed Strebel's attorney's services and time through July 11, 1991. App. at 65-70.
 
 
 28
 After the judge entered his findings, conclusions and judgment on December 26, 1991, Strebel filed his motion to amend findings, make additional findings, and to amend judgment on December 31, which requested the increase in fees to cover trial and post-trial services, as noted. The motion also cited the supplemental affidavit of Strebel's counsel filed September 30, 1991, which detailed the trial and post-trial services for oral argument, proposed findings and the like, services totaling 22.25 hours by counsel and 8.5 hours by paralegals. App. at 105-113. The record shows no objection by any defendant to the representation of the amount of these services.
 
 
 29
 The trial judge's ruling on the request for compensation for the trial and post-trial services by Strebel's counsel was made in a June 17, 1992 order which briefly stated: "Plaintiff's Motion to Make Additional Findings, to Amend Findings and to Amend Judgment is hereby denied." App. at 161. The order also disposed of Allied's motion to reduce the award against it, but there was no other comment about Strebel's request for compensation for trial and post-trial work and no reason was given for the denial of any compensation for those services.
 
 
 30
 It is true that there was an exchange at the closing argument on this point with a brief comment by the trial judge on his ruling. After the judge said he would allow $6,000 in attorney fees for Strebel (reducing the amount from $9,200 requested), Strebel's counsel and the court stated:
 
 
 31
 MR. MARTINEAU: That also doesn't cover my time--all of my time at Trial, or in--
 
 
 32
 THE COURT: You're not entitled to all your time; you're entitled to the benefit, and you're entitled to ask for fees as the result of the benefit that you confer upon your client. You don't simply start the clock running. Supp.App. at 51. The court's statement clearly referred to the limitation of awards under 1989 of the Federal Act to services in "any successful action." But the statement gave no reason why no consideration was given to the request for compensation for trial and post-trial services not covered by the first affidavit and request by counsel.
 
 
 33
 The defendants argue that Strebel waived any claim for attorney fees for additional services after trial, citing Cabrera v. Cottrell, 694 P.2d 622, 624 (Utah 1985), and its ruling that failure to ask for all fees in the trial phase of the case waives any right to other fees. We disagree. This request for fees is made under the fee provision of the Federal Act, 1989(a), and is not controlled by state law. Under a similar attorney fees statute, in White v. New Hampshire Dept. of Employment Sec., 455 U.S. 445, 451-52 (1982), the Supreme Court noted that in such federal proceedings, entitlement to fees requires an inquiry separate from the decision on the merits, an inquiry that cannot even commence until one party has prevailed. Also, here, as a factual matter the Supplemental Affidavit of Strebel's counsel detailing the additional trial and post-trial work was filed on September 30, 1991, several months before the final ruling by the trial judge on the additional fee request. We see no basis for holding that Strebel's counsel waived such a request and no waiver ruling was made by the trial judge.
 
 
 34
 We feel that the trial court's brief rejection of the request in the order, quoted above, without any rationale for denying the request, requires a remand. Smith v. Freeman, 921 F.2d 1120, 1124 (10th Cir.1990). In Smith we remanded where there was no reason given for rejection of a claim for services on a reply brief below. Here the fee matter is an important part of the statutory scheme to combat odometer fraud. "Congress clearly articulated its intent to encourage this type of suit by authorizing an award of attorneys' fees for successful prosecution under all but special circumstances." Fleet Inv. Co. v. Rogers, 620 F.2d 792, 793 (10th Cir.1980). Fleet Inv. noted approvingly that the Eighth Circuit had recognized that "in many situations, the amount of damage under the Act will be so small that few attorneys will pursue his client's [sic] case with diligence unless the amount of the fee be proportionate to the actual work required, rather than the amount involved." Id. (quoting Duval v. Midwest Auto City, Inc., 578 F.2d 721, 726 (8th Cir.1978).
 
 
 35
 We conclude that we should reverse the district court's denial, without explanation, of the request for compensation for the trial and post-trial services not provided for in the award made, and that we should remand that claim for reconsideration, findings, and a new determination.
 
 IV
 Allied's Liability as Surety
 
 36
 Strebel further argues that the district court erred by holding Allied liable on the bond for only the amount of actual damages rather than the full amount of the judgment against Wagstaff (including actual damages trebled), together with attorney fees and costs. Brief of Appellant at 14-16; Reply Brief of Appellant at 6-7. Strebel contends that the judge improperly focused on the language in the bond binding the principal and the surety to indemnify "for loss suffered," and ignoring the further provision in the bond conditions that the bond obligation shall remain in force unless the principal "shall pay judgments and costs adjudged against said principal."[4] Strebel relies on the Utah rule that the construction of such bonds of motor vehicle dealers and their sureties is subject "to the rule that the contract of a surety, for hire, is to be strictly construed against the surety." Dennis Dillon Oldsmobile, GMC, Inc. v. Zdunich, 668 P.2d 557, 560 (Utah 1983) (quoting J.F. Tolton Investment Co. v. Maryland Casualty Co., 293 P. 611, 612 (Utah 1930)).
 
 
 37
 Strebel's argument is forceful, particularly because of the Utah rule of construction of such bonds and the bond conditions which include the obligation to "pay judgments and costs," the judgment in the instant case including the trebled damage award. We are persuaded, however, that the trial judge correctly allowed recovery against the surety only for the actual damages which the judge had found. We feel the condition about payment of the judgment must be read together with the repeated references "for loss suffered," and this most reasonably means actual damages. The interpretation by the trial judge is in accord with the general principle recognized in the Restatement of Security, 195 and 198 (1941). Section 198 states that an attachment bond's liability extends to all loss sustained in consequence of a wrongful attachment, "but does not include exemplary damages which may be recovered...." See also 11 John Alan Appleman and Jean Appleman, Insurance Law and Practice 6361, at 126-28 (1981).
 
 
 38
 In Tomlinson v. Camel City Motors, Inc., 408 S.E.2d 853 (N.C.1991), an action was brought by a customer of an automobile dealer for damages for unfair or deceptive acts or practices under a state statute and for treble damages and attorney fees which the statute allowed. The Supreme Court of North Carolina held that the remedy for one "who shall have suffered any loss" did not support recovery there against a surety on a statutory bond for the trebeled portion of damages. Id. at 855-56. The court recognized an argument, like one Strebel makes here, that the statute's purpose was not mere deterrence, but was also meant to encourage private enforcement and to provide a remedy for the aggrieved consumer. Where the consumer has lost a great deal more than the initial damages by spending extra money and time to gain satisfaction the trebled portion is seen as compensatory rather than punitive in nature. But such a showing was not made in Tomlinson. Here, likewise, Strebel has not shown expenditure of extra time and money.
 
 
 39
 We are convinced we should affirm the trial judge's ruling denying recovery against Allied for the trebled portion of the damages.
 
 V
 Attorney Fees for this Appeal
 
 40
 Finally, Strebel requests attorney fees for this appeal. We have "recognized that a party may be awarded fees incurred in resolving the fee issue itself." Bratcher v. Bray-Doyle Indep. Sch. Dist. No.42, 8 F.3d 722, 726 (10th Cir.1993). Whether to grant appellate fees is a matter for our discretion. We agree that recovery should be allowed for the work done by Strebel's counsel on the issues on which he has prevailed'e in the instant appeal (Parts II and III supra ). We therefore remand this claim for the trial judge to consider by proceedings he deems proper, and to make findings and a determination thereon.
 
 
 41
 AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings in accord with this opinion.
 
 APPENDIX (Page 1)
 
 42
 BOND OF MOTOR VEHICLE DEALER, SALESMAN OR CRUSHER
 
 
 43
 KNOW ALL MEN BY THESE PRESENTS: That we, Milton Wagstaff Motor Company, Inc. of Street Address 84 West 7th South City Salt Lake City, UT County of Salt Lake, Utah, as Principal and AID Insurance Company (Mutual) a Surety Company qualified and authorized to do business in the State of Utah as Surety, are jointly and severally held and firmly bound to the people of the State of Utah to indemnify persons, firms and corporations for loss suffered by reason of violation of the conditions hereinafter contained, in the total aggregate annual penal sum of Twenty Thousand Dollars ($20,000.00), as required by Utah Code Annotated, Section 41-3-16(1), 1953 as amended, lawful money of the United States for the payment of which, well and truly to be made, we bind ourselves, our heirs, executors, administrators, successors and assigns, jointly, severally and firmly by these presents. The total aggregate annual liability of this bond, regardless of the number of claims, may not exceed $20,000.00.
 
 
 44
 THE CONDITION OF THIS OBLIGATION IS SUCH, That,
 
 
 45
 WHEREAS, the above bounden principal has applied for a license to do business as a Motor Vehicle Dealer within the State of Utah, and that pursuant to the application, a license has been or is about to be issued.
 
 
 46
 NOW, THEREFORE, if the above bounden principal shall obtain said license to do business as such Motor Vehicle Dealer and shall well and truly observe and comply with all requirements and provisions of THE ACT PROVIDING FOR THE REGULATION AND CONTROL OF THE BUSINESS OF DEALING IN MOTOR VEHICLES, as provided by Chapter 3, Title 41, Utah Code Annotated, 1953, as amended, and indemnify persons, firms and corporations in accordance with Utah Code Annotated, Section 41-3-16(1), 1953 as amended, for loss suffered by reason of the fraud or fraudulent representations made or through the violation of any of the provisions of said Motor Vehicle Business Act or any law respecting commerce in motor vehicles, or rule or regulation respecting commerce in motor vehicles promulgated by a licensing or regulating authority and shall pay judgments and costs adjudged against said principal so as not to exceed a total aggregate annual liability of $20,000.00 regardless of the number of claims on this bond on account of fraud or fraudulent representation or for any violation or violations of said laws, rules or regulations during the time of said license and all lawful renewals thereof, then the above obligation shall be null and void, otherwise to remain in full force and effect. Said bounden principal shall also pay reasonable attorney's fees in cases successfully prosecuted to judgment.
 
 APPENDIX (Page 2)
 
 47
 The Surety herein reserves the right to withdraw as such surety except as to any liability already incurred or accrued hereunder and may do so upon the giving of written notice of such withdrawal to the principal and to the Motor Vehicle Business Administrator; provided, however, that no withdrawal shall be effective for any purpose until sixty days shall have elapsed from and after the receipt of such notice by the said administrator, and further provided that no withdrawal shall in anywise affect the liability of said surety arising out of fraud or fraudulent representations or for any violation or violations of said laws, rules or regulations by the principal hereunder prior to the expiration of such period of sixty days, regardless of whether or not the loss suffered has been reduced to judgment before the lapse of sixty days.
 
 
 48
 Signed and sealed this 10th day of June, 1985.
 
 ATTEST
 By ))))))))))
 
 49
 Milton Wagstaff Motor Co., Inc.
 
 
 
 Principal
 AID Insurance Co. (Mutual)
 ))))))))))
 Attorney-in-Fact
 Grant R. Goodnow
 Approved as to form
 Utah State Attorney Generals Office
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 The relevant part of the act for this case, 1989, provides:
 (a) Any person who, with intent to defraud, violates any requirement imposed under this subchapter shall be liable in an amount equal to the sum of--
 (1) three times the amount of actual damages sustained or $1,500, whichever is the greater; and
 (2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with reasonable attorney fees as determined by the court.
 (b) An action to enforce any liability created under subsection (a) of this section, may be brought in a United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within two years from the date on which the liability arises.
 
 
 [3]
 A hearing on these motions was held on May 26, 1992, App. at 163, but the transcript of that hearing does not appear in our record
 
 
 [4]
 The entire bond is reproduced as an appendix to this order and judgment